430 So.2d 1354 (1983)
Phillip W. ST. ROMAIN, et al., Plaintiff-Appellant,
v.
MIDAS EXPLORATION, INC., Defendant-Appellee.
No. 82-729.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Rehearing Denied May 26, 1983.
*1355 Hopkins & Little, Winnfield Little, Jr., Lake Charles, for plaintiff-appellant.
Kenneth Michael Wright, Lake Charles, Skipper M. Drost of Drost & Savoie, Sulphur, for defendant-appellee.
Before GUIDRY, STOKER and KNOLL, JJ.
KNOLL, Judge.
In this action to recover the agreed bonus payment for a mineral lease, the appellantslessors appeal a judgment rejecting their demands.

FACTS
The appellants own in indivision 600 acres of land in Beauregard Parish. In August, 1981, Ricky French, a landman employed by Midas Exploration, Inc. (hereafter referred to as "Midas"), contacted Phillip W. St. Romain, one of the landowners, concerning a mineral lease on the 600 acres. After protracted preliminary negotiations, Mr. French and Mr. St. Romain agreed to a mineral lease which provided a lease bonus of $50,000.00, a renewal rental of $60.00 per acre, and a one-sixth royalty. Mr. French prepared a mineral lease containing these provisions and had Midas's central office prepare a draft in the amount of $50,000.00. Mr. French presented the lease agreement and draft to Mr. St. Romain. All the coowners signed the mineral lease and endorsed the bank draft. When Mr. French picked up the signed and acknowledged lease, Mr. St. Romain deposited the endorsed draft for collection with the Calcasieu Marine National Bank (hereafter "Calcasieu Marine") in Lake Charles.
Robert E. Young, Jr., president of Midas, signed the draft which was dated August 25, 1981, directing Calcasieu Marine to pay to the order of the appellants the sum of $50,000.00. The following typewritten language appears on the face of the draft:
"Subject to title and 30 days sight.
Oil, gas and mineral lease dated 8-25-81 covering a certain tract of land containing 600 acres, more or less, ..."
On the reverse side of the draft, preceeding the payees' signatures, is the following printed provision:
"The drawer, payee and endorsers hereof, and the grantors of the lease or mineral deed described on reverse side hereof, do hereby constitute and appoint the collecting bank escrow agent, to hold this draft for the time above specified subject alone to acceptance of payment hereof by the drawee, within said time, and without any right of the drawer, payee or endorsers hereof, or said grantors, to recall or demand return of this draft prior to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusal to return the same prior to such expiration in the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto."
Midas did not pay the draft within 30 days after it was deposited. Calcasieu Marine agreed to hold the draft while Mr. St. Romain inquired from Midas its reason for not paying the draft. Midas told Mr. St. Romain that funds were unavailable to pay the draft.
Mr. French personally attempted to return the original signed lease agreement to the lessors, but Mr. St. Romain refused acceptance of the document. Shortly thereafter, Calcasieu Marine returned the draft to Mr. St. Romain with no explanation. On October 29, 1981, Mr. Young mailed the original signed lease to Mr. St. Romain with a letter explaining that Midas's "principal was unable to honor the drafts, ..."
Appellants assert that they are entitled to recover the lease bonus because they negotiated and signed a valid mineral lease. Midas maintains that a mineral lease was not perfected with appellants because Midas *1356 never signed the lease and did not otherwise accept it. Midas further contends that the language on the reverse side of the draft indicates that the company was not bound to accept the lease.
Midas does not contend that there are title problems with appellants' land.
Mr. Young testified that Midas was operating as a joint venturer with Ira Terry, a geologist, and Michael T. Collins, an independent petroleum engineer, to obtain mineral leases in Beauregard Parish. Midas was issuing 30 day sight drafts in order to allow its joint venturers time to sell the leases.
Mr. Young stated that payment of the appellants' draft and acceptance of their mineral lease was conditioned upon Midas's success in selling the drilling package. Mr. French did not inform Mr. St. Romain that acceptance of the mineral lease was contingent upon Midas's sale of the drilling package. Mr. French, the only person who negotiated the lease with appellants, did not testify at trial.

THE MINERAL LEASE
A basic issue in this case is whether a valid mineral lease existed between the appellants and Midas. The Louisiana Mineral Code states that a mineral lease is a contract whereby the lessee is granted the right to explore for and produce minerals. LSA-R.S. 31:114. Louisiana mineral leases are construed as leases generally, and, wherever pertinent, the codal provisions applicable to ordinary leases are applied to mineral leases. Williams v. Humble Oil & Refining Co., 432 F.2d 772 (U.S.App. 5th Cir.1970) rehearing denied 435 F.2d 772, certiorari denied Humble Oil & Refining Co. v. Price, 91 S.Ct. 1526, 402 U.S. 934, 28 L.Ed.2d 868.
Article 2669 of the Civil Code provides that a lease is "a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing ... at a fixed price." Article 2670 of the Civil Code states that three things are absolutely necessary to the contract of lease: the thing, the price, and the consent. Although the lease articles in the Civil Code do not provide special provisions relating to the consent of the contracting parties, Article 2668 of the Civil Code applies the title "Of Conventional Obligations", LSA-C.C. Arts. 1761-2291, to contractual consent in leases.
In the case at bar the trial court found that Midas and the appellants had agreed on the thing to be leased (the minerals in 600 acres) and the price ($50,000.00 bonus $60.00 renewal rental, and a one-sixth royalty). As to consent the trial court stated:
"... [T]he written lease instrument was not recorded or transferred, and Midas took no steps to possess, explore or develop the St. Romain land. Therefore the evidence does not establish that Midas ever gave its consent to a written mineral lease or unconditionally accepted the terms and conditions of the written instrument executed by plaintiffs."
It is essential that the lease contract contain an offer and acceptance. LSA-C.C. Art. 1798; Hearne v. De Generes, 144 So. 194 (La.App. 2nd Cir.1932). Before either party is obligated it is necessary that consent to the contract must be communicated to the other party. Pailet & Jacobs v. Rhodes, 18 La.App. 38, 137 So. 868 (La.App. Orl.1931). Consent may be expressed in words or implied in actions:
Civil Code Art. 1811
"The proposition as well as the assent to a contract may be express or implied:
Express when evinced by words, either written or spoken;
Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent."
Civil Code Art. 1816
"Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract..."
*1357 The rule of law is that a person, legally capable of contracting, may under certain circumstances be held to have accepted an offer, and to have consumated a binding contract, through silence, inaction, or some indicia of performance under a written obligation, although the accepting party has not signed the contract. In these instances acceptance of the offer is implied from the actions of the party to whom the offer was made. LSA-C.C. Arts. 1797, 1803, 1811, 1816, and 1817. Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir.1974).
"Acceptance of an offer may of course be made by silent deed as well as by word; consent may be implied from actions under the circumstances, as well as by expressed words; but such acceptance of, founded on such consent to, an offer nevertheless creates a valid contract, and the offerer is bound by the obligation previously offered by him in exchange for the act which the obligee has performed in response to the offer..." Johnson v. Capital City Ford Company, 85 So.2d 75 (La.App. (1st Cir.1955).
Article 1818 of the Civil Code provides:
Where the law does not create a legal presumption of consent from certain facts, then, as in the case of other simple presumptions, it must be left to the discretion of the judge, whether assent is to be implied from them or not."
This codal article defines our duty in this case. We imply Midas's consent to a binding obligation and mineral lease with the appellants.
Midas initiated the contact with appellants regarding the mineral lease. Midas made the final counteroffer which appellants accepted. Midas, in its corporate offices, prepared the mineral lease and the sight draft for the amount of the agreed bonus payment. Midas delivered the lease and the sight draft to appellants for their signature.
After the lease was signed and appellants had deposited the draft for collection, Midas's president notified his joint-venturers that the company "had the lease." In response to this information Ira Terry attempted to sell the lease to people in Dallas, Texas. Mr. Young testified that the reason the lease was purchased from the appellants was on Ira Terry's recommendation that he could sell it.
The Louisiana Supreme Court in Fomby v. Columbia County Development Co., 155 La. 705, 99 So. 537 (La.1924) said:
"It is contended, as we have observed, that the leases were not signed by the lessee, and are therefore invalid; ...
"With respect ... it may be said that while it is true, the leases were not signed by the lessee, yet it is clear that the lessee paid the rentals, and thereby, if not before then, showed its acceptance of the contracts; ..." (Emphasis added)
Although it is necessary that mineral leases be in writing, it is not essential that the lessee sign the written instrument. Fomby, supra. Bills v. Fruge, 360 So.2d 661 (La. App. 3rd Cir.1978); Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7 (La.1963); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (La.1963). What is required is that the lessee indicates consent to the lease agreement. In this case Midas's consent was manifested when it tendered the draft for payment of the bonus as well as its attempt to sell the mineral lease. These actions coupled with the serious negotiations regarding the lease agreement indicated Midas's intent to be bound by the mineral lease.

CONDITIONS
As stated above, Midas asserts that the bonus payment was conditional. It hinges its assertion on the last sentence of the endorsement clause which states that if payment is not made within the time stated on the face of the draft, that the collecting bank shall return it "... and no liability for payment or otherwise shall be attached to any of the parties hereto."
We note that the mineral lease does not contain any written language indicating that Midas's acceptance of the agreement was contingent upon any conditions.
*1358 The only explicit conditional language evidenced in the course of the transaction is found on the face of the sight draft. There it indicates that payment is "[s]ubject to title and 30 days sight".
Article 1959 of the Civil Code states:
"However general be the terms in which a contract is couched, it extends only to the things concerning which it appears that the parties intended to contract."
The draft language relied upon by Midas is general in its statement; it imports no specificity. Looking at the contract as a whole and the circumstances surrounding its negotiation, the only condition for payment brought to appellants' attention is that appellants' title to the property had to be confirmed. This result is reached through an interpretation of the contract clauses "the one by the other," giving to each the meaning which results from a reading of the entire act. LSA-C.C. Art. 1955. Any doubt as to a document's meaning must be resolved against the company in whose office the contract was prepared. Odom v. Union Producing Company, 243 La. 48, 141 So.2d 649 (La.1962); Lawson v. Martin Timber Company, 238 La. 467, 115 So.2d 821 (La.1959); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (La.1939).
Midas prepared the lease instrument and the sight draft. The only condition of the mineral lease made known to appellants was the requirement of valid title. Neither during negotiation, nor after execution of the lease agreement were appellants told that the validity of the mineral lease was dependent upon appellees marketing it. The contract circumstances and the lease agreement indicate that the intent of the parties was to enter into a mineral lease subject only to the condition that appellants' title to the property be approved within a period of 30 days after deposit of the sight draft. The endorsement language on the reverse side of the draft is thereby interpreted so as to fall within the ambit of the contracting parties' intent.
We find there was an implied acceptance by Midas of the offer to lease minerals made by appellants subject only to the approval of appellants' title to the property and minerals; that the mineral lease contract ripened into a binding and valid obligation on Midas; and that appellants are entitled to recover the bonus payments specified in the contract.
For the reasons assigned, the judgment of the trial court is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in favor of Phillip W. St. Romain, Ursula L. St. Romain, Preston J. St. Romain, Alice L. St. Romain, Ruth S. Stebbins, Chester A. St. Romain, Maizi G. St. Romain, Don E. St. Romain, and Jo Ann St. Romain and against Midas Exploration, Inc. in the amount of $50,000.00 together with legal interest from date of judicial demand. All costs in the trial court and the costs of this appeal are assessed against the defendant, Midas Exploration, Inc.
REVERSED AND RENDERED.