469 So.2d 1217 (1985)
Anna REED
v.
FLAME PETROLEUM, INC.
No. 84 CA 0343.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Roy Maughan, Baton Rouge, for plaintiff-appellee, Anna Reed.
Steve M. Marks and Linda L. Lynch, Baton Rouge, for defendant-appellant, Flame Petroleum, Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Anna Reed (plaintiff) brought this suit against Flame Petroleum, Inc. (defendant), seeking to recover a bonus payment of $8,469.00 under a mineral lease. The trial court held for plaintiff and defendant appealed, alleging six assignments of error concerning two primary issues: (1) whether plaintiff had title to the property over which the mineral lease was granted, and (2) whether plaintiff could recover the amount of the draft issued to her when she signed the mineral lease.
On February 4, 1982, plaintiff signed an "Oil, Gas, and Mineral Lease" in favor of defendant over an 84.69-acre tract. The lease provided for a bonus payment of "One Hundred Dollars and Other Valuable Considerations," and by its terms would terminate on March 1, 1982, unless drilling was commenced or rental payments made. *1218 Also on February 4, defendant delivered to plaintiff a draft with the following language in its upper left corner:
On approval of lease described hereon, and on approval of title to same by drawee not later than 20 banking days after arrival of this draft at collecting bank.
This was followed by "Pay to the order of Anna D. Reed" the sum of $8,469.00. Plaintiff testified that she deposited the draft with her savings and loan company "about the day after they give it to me, or the first banking day." (We note that the first banking day after Thursday, February 4, 1982, was Friday, February 5, 1982.) Also on February 4, the defendant recorded the lease in the conveyance records of East Baton Rouge Parish.
Defendant maintains that it discovered a defect in plaintiff's title to the property prompting it to dishonor the bonus payment draft on March 11, 1982. We note that the lease, by its terms, expired on March 1, although it remained on the records until a cancellation was executed and filed on March 15, 1982. Plaintiff's suit to recover the bonus payment was filed on October 20, 1982.
Defendant denied the existence of a mineral lease in its answer. We note that it did not sign the lease. It apparently abandoned this position by referring repeatedly in its brief to the lease being "signed" by both parties. Furthermore, consent to a contract may be implied by the action of the parties. LSA-C.C. art. 1811, 1816, 1817 (West 1950); St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983). By recording the lease in the conveyance records of East Baton Rouge Parish, the defendant held itself out to the world as the lessee of these mineral interests, and we can infer from its actions that it consented to the lease.
Simultaneously with the signing of the lease, defendant issued to plaintiff a draft, payment of which was conditioned upon two events: (1) approval of the lease "described hereon," and (2) "approval of title to same" by drawee not later than 20 banking days after arrival of the draft at the collecting bank. Defendant argues that it did not approve the lease due to defects in plaintiff's title, and that the draft was therefore not collectible.
We need not address the issues raised by the draft and its provisions because we have noted that no provision of the lease limits the plaintiff's recourse for the bonus payment to the draft. Therefore, we need not consider whether the draft was "approved," nor consider its effect (if any) as a contract between the parties.[1] Furthermore, we distinguish that part of St. Romain v. Midas Exploration, Inc., 430 So.2d 1354, 1357-58 (La.App. 3rd Cir.1983) and its progeny which find that conditions expressed in the draft form a part of the contract of lease. The intent of parties to a legal agreement is to be determined by the words of the contract, when these are clear and explicit. LSA-C.C. art. 1945. When there is anything doubtful in one contract, it may be explained by referring to other contracts or agreements made on the same subject between the same parties. LSA-C.C. art. 1949. The instant lease clearly and explicitly conveyed to the defendant the exclusive right to enter plaintiff's land to explore for and produce all minerals. The stated consideration for this right is ambiguous as stated on the lease, but easily determined by referring to the evidence adduced at trial.
Accordingly, the trial court was not clearly wrong in finding that there was a *1219 valid binding lease perfected February 4, 1982, and effective until March 1, 1982, in consideration of which defendant obligated itself to pay a bonus of $100.00 and other valuable consideration. The testimony of all parties and the evidence in the record supports the finding that the intended bonus payment was $8,469.00. We affirm the trial court judgment. All costs are taxed to defendant.
AFFIRMED.
NOTES
[1] We note the apparently conflicting opinion of this court in Watson v. Manual, 467 So.2d 15 (La.App. 1st Cir.1985). We distinguish that case because the lease therein, for a three-year term, had not expired at the time the draft was dishonored, and from the opinion we cannot determine whether it had been recorded. However, the lease in this case had a short primary term which expired before dishonor of the draft; further, it was promptly recorded by defendant. Defendant was thus able to hold itself out to the world as lessee, discouraging all other potential lessees. See LSA-R.S. 9:2721, 2722. It was for this privilege that defendant consented to the bonus payment promised plaintiff.