JOHN S. COVINGTON, Judge.
In this suit for wages or commissions due, plaintiff appealed the judgment for defendant on plaintiff’s main demand and defendant appealed the judgment for plaintiff on defendant’s reconventional demand for overpayment of wages.
The primary issue is whether the trial court erred in concluding that the amounts in question were of the nature of bonus or incentive payments contingent upon plaintiff’s continued employment with defendant, rather than earned wages or commissions, and that the employer’s failure to give plaintiff these bonus payments upon his departure from employment is not vio-lative of LSA-R.S. 23:634.[1]
We affirm.
Lenwood J. Broussard (plaintiff) first became employed by Arthur Dooley & Son, Inc. (defendant) in 1971. In mid-1973, plaintiff accepted the position of branch manager of defendant’s Baton Rouge store, which position he held through 1973, 1974 and 1975. Plaintiff resigned in January of 1976 and took a job with a competit- or of defendant’s.
Plaintiff and defendant did not execute a written employment contract. Plaintiff was compensated for his services with a monthly base salary which rose from $850 in 1973 to $1050 in 1975. In addition, he received a commission on profits earned by his branch, which was computed annually using formulas which changed each year of plaintiff’s employment. Plaintiff admits that he received all of his base salary and commissions. At issue, however, are certain sums over and above the salary and commissions which plaintiff contends were also earned commissions or bonuses and *797 which he contends were wrongfully refused him after his resignation.
Plaintiffs claim is based on the following facts. In late 1972, defendant presented plaintiff with a written noncompetition agreement. By its terms, as consideration for plaintiff’s agreement not to compete with defendant under certain circumstances, defendant agreed to ‘set aside’ certain amounts (computed on the same formula as the earned commissions, but at a lesser percentage), to be paid to plaintiff two years after the year in which they accrued. However, plaintiff refused to sign the proposed contract.
Defendant’s president testified that he believed plaintiff would eventually sign the noncompetition agreement, so the formulated amount of “no compete pay” (as characterized in defendant’s books) was computed annually and listed in the corporate books as accruing to plaintiff’s name. However, the computed amounts remained intermingled with corporate funds; defendant paid income taxes on these amounts, as on all corporate profits, and the amounts were not listed on plaintiff’s W-2 forms.
For the year 1973, the corporation’s records showed that there had accrued to plaintiff’s name the sum of $114.07 in “no compete pay.” On December 18, 1975, defendant’s president mailed plaintiff a check in that amount, with a note that stated as follows:
This is “no compete” money for 73. Since you didn’t sign an agreement for 1974 I will treat the money set aside in 1974 and future years as an employment continuity payment which will be m'ade 2 years after the end of the year accrued if you are an employee of the corporation at that time.
I will assume this is satisfactory with you unless I hear otherwise.
According to the uneontradicted testimony of defendant’s president, plaintiff responded to this note only to thank him for the enclosed check. Sometime within the next month, plaintiff resigned from defendant’s employ.
For the year 1974, defendant “set aside” in plaintiff’s name the sum of $2,040.86 as “no compete pay.” For the year 1975, $434.85 was “set aside.” Plaintiff’s suit, filed under LSA-R.S. 23:631 et seq., sought payment of these sums, plus penalties and attorney fees. Defendant filed a reconven-tional demand for alleged overpayment of commissions. After trial on the merits, the trial judge ruled that the sums sought by plaintiff were in the nature of bonus or incentive payments rather than earned commissions or wages and dismissed plaintiff’s main demand; the trial judge also dismissed defendant’s reconventional demand. Both parties took devolutive appeals from the judgment. In its brief on appeal, however, defendant indicated its desire that its appeal from that portion of the judgment dismissing its reconventional demand be dismissed.
While we agree with the trial court’s ultimate conclusion that plaintiff’s claim has no merit and accordingly affirm the judgment rendered below, we do so for different reasons than those articulated by the trial judge in his oral reasons for judgment.
The record reveals that plaintiff’s bargained-for compensation for his services included his monthly base salary and his percentage commissions. The amounts plaintiff seeks herein were initially offered as compensation for plaintiff’s agreement not to compete, under certain circumstances, with his employer. Plaintiff chose not to execute the proposed contract. There was no evidence in the record that the amounts offered in the proposed noncom-petition agreement formed part of the bargained-for compensation for plaintiff’s labor which he otherwise would have received in wages or other benefits. Cornet v. Cahn Electric Co., Inc., 434 So.2d 1052, 1056 (La.1983); Pender v. Power Structures, Inc., 359 So.2d 1321, 1323 (La.App. 4th Cir.1978).
The question remains whether plaintiff subsequently acquired a contractual right to the amounts in question through the December 18, 1975 letter (quoted above) *798 written to plaintiff by defendant’s president. In that letter, the employer made a gratuitous payment to plaintiff of the sum computed for the year 1973 (according to the terms of the unsigned noncompetition agreement). The employer offered to consider as “employment continuity” payments the amounts which would have been plaintiff’s compensation under the noncom-petition agreement for the years subsequent to 1973, and stated that plaintiff’s silence would indicate consent to the offer.
Both parties must agree to the substantial elements of a contract to have a binding obligation. Sanders’ Camper Village, Inc. v. Coleman Oldsmobile, Inc., 418 So.2d 679 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982). Once an offer has been made, consent to a contract need not be expressed in words, but may be implied by actions of the parties. Reed v. Flame Petroleum, Inc., 469 So.2d 1217 (La.App. 1st Cir.1985). Under certain circumstances, a person may be held to have accepted an offer, and to have thus consummated a binding contract, through silence, inaction, or some indicia of performance under a written obligation, although the accepting party has not signed the contract. St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983).
In the instant case, plaintiff was silent in the face of defendant’s offer. In his brief on appeal, plaintiff indicates that he did not intend for his silence to be construed as acceptance. Indeed, he indicates that his resignation within a month after the offer was made was meant to indicate to his employer plaintiff’s displeasure with the proposal. Since plaintiff did not accept the offer made December 18, 1975, no contract was perfected and plaintiff acquired no contractual right to the amounts in question. Accordingly, the question of the contract’s validity under LSA-R.S. 23:634 is not an issue we can address.
As to that portion of the judgment dismissing defendant’s reconventional demand, we agree with defendant’s admission in brief that its appeal has no merit.
For the foregoing reasons, the judgment of the trial court and its assessment of trial court costs is affirmed; costs of appeal to be born by plaintiff and defendant equally.
AFFIRMED.

. LSA-R.S. 23:634 provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.