Babcock Lumber Company *v.* Allison, Appellant.

Argued April 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

354

*Budd B. Boose,* for appellant.

*Charles H. Ealy,* of *Uhl, Ealy & Uhl,* with him *Nicholas Unkovic,* for appellee.

OPINION BY BALDRIGE, J., July 1, 1939:

This appeal is from the order of the court below refusing to open a judgment confessed by the plaintiff against the defendant for rentals due under a lease.

The John Irvin Executors et al., by deed, dated January 17, 1898, conveyed to E. V. Babcock seventeen tracts of land in Paint and Ogle Townships, Somerset County, reserving thereunder all the coal and fire clay and the right to erect tipples, dwelling houses for the use of miners, and other buildings, and to build and operate railroad sidings, wagon roads, etc.

These tracts were later transferred by the grantee to the Babcock Lumber Company. In October, 1915, Mary I. T. Orlady et al., heirs of John Irvin, who had acquired the coal in the tracts of land aforesaid, leased to John Lochrie, for a term of twenty years, two veins of coal located thereunder, including the mining rights that had been reserved under the Babcock deed. This is referred to in the record as the Orlady lease and will be so designated hereafter. Subsequently, Lochrie assigned this lease to one Hartman, who, on March 8, 1932, assigned his interest therein to W. F. Allison, appellant herein, who erected a small house, tipple, office building, motor barn, and loading dock. The lessee had the right during the life of the agreement and at any time within the period of six months after its termination, provided all royalties had been fully

paid, to remove and take away all his property upon the demised premises; but if there was a breach in the payment of royalties or of any of the covenants or conditions of the lease, then the lessee forfeited his right to the property.

The Orlady lease expired in October, 1935. In the meantime, it seemed the parties considered that the coal reserved had been exhausted. As a result thereof, all the rights of the lessor had been sold by January 3, 1936, to the commissioners of Somerset County for non-payment of taxes. The three "Pot Ridge" tracts were redeemed subsequently by Edith T. Orlady and Emma P. Wilson, two of the Irvin heirs, and suit was brought by them against Allison to recover royalties alleged to be due for coal mined from the "Pot Ridge" lands.

While this suit was pending and the plaintiffs therein were asserting certain rights to these buildings as security for alleged royalties due them by Allison, the Babcock Lumber Company, claiming title to the buildings on their land as they had not been removed within six months after the expiration of the Orlady lease, improved and repaired them, had them insured, and paid the taxes thereon. Before the suit against Allison was terminated, a written lease was entered into between him and the Babcock Lumber Company, dated November 9, 1936, effective as of October 1, 1936, whereby the plaintiff leased to Allison the buildings he had erected on the surface of the land owned by the plaintiff, and also granted a right-of-way, twenty feet in width, leading from the tipple across the plaintiff's lands to the coal lands of the defendant, for five years from the effective date, for a monthly rental of $50 per month, payable in advance. The lease contained the following provision: "Part of the buildings and tipple referred to in this lease are subject to a controversy as to the right of possession and ownership thereof and this agreement is made conditioned on the termination of said controversy favorable to the parties hereto."

The tipple and the buildings referred to in the agreement, located on lands of appellee, are several miles from the "Pot Ridge" lands and the title to any coal or fire clay under appellee's land is in the commissioners of Somerset County. Allison paid $50, one month's rent, at the time the lease was executed and he had placed tenants in the buildings, who were occupying them on that date and continued in possession under Allison until this present proceeding.

Allison thereafter made a settlement of the claim against him under the Orlady lease, and on June 25, 1937, entered into a new lease with Edith T. Orlady and Emma P. Wilson to operate the "Pot Ridge" lands, and refused to make any further payments of rent to the Babcock Lumber Company. On October 5, 1937, judgment was confessed against Allison for twelve months' rent, amounting to $600, together with attorney's commissions and costs, and a fi. fa. issued thereunder. He thereupon filed a petition to open judgment, alleging that he is not indebted to the plaintiff for rental; that he is the owner of the premises purported to be leased; that when he attempted to clear the twenty-foot-wide tramroad, the agent of Edith T. Orlady and Emma P. Wilson challenged his right to do so; and that the controversy upon which the lease was conditioned has not terminated favorably to the parties to the lease.

The court granted a rule to show cause why the judgment should not be opened and the petitioner let into the defense. A responsive answer was filed to the petition, which included an averment that Edith T. Orlady and Emma P. Wilson were not contesting respondent's rights to the property leased to the appellant and that any controversy that may have existed has been terminated favorably to the parties to the lease.

The court, after hearing testimony and arguments, concluded that whatever rights the appellant had to the leased property had terminated six months after

October, 1935, the date the twenty-year Orlady lease ended, and as he failed to remove the buildings they reverted to the owner of the surface (see *Black et al. v. Hoffman et al.,* 324 Pa. 193, 188 A. 149) ; that the petitioner has been in possession and enjoyment of the premises under the lease; and whatever controversy formerly existed did not in any way interfere with his possession of the leased premises; that Miss Orlady and Mrs. Wilson are not asserting any right, claim, or title thereto; that the petitioner, as tenant, is estopped to deny title of his landlord; and, finally, that the testimony of the petitioner is insufficient to warrant the opening of the judgment; and accordingly discharged the rule. This appeal followed.

We are in entire accord with the position taken by the learned court below. The well-recognized rule is that an application to open a judgment entered upon a warrant of attorney is an equitable proceeding, governed by equitable principles and addressed to the sound discretion of the court. An appellate court considers only whether the court below, which must weigh the evidence and pass upon the credibility of witnesses, has abused its discretionary power: *Mutual B. & L. Assn. of Shenandoah v. Walukiewicz et al.,* 322 Pa. 240, 185 A. 648; *Matovich v. Gradich et ux.,* 123 Pa. Superior Ct. 355, 362, 187 A. 65. To warrant the opening of a judgment confessed under the terms of the lease, the lessee is required to prove clearly and explicitly not only that he surrendered the lease, but also that the lessor accepted the surrender: *Spaulding v. Justice,* 68 Pa. Superior Ct. 133; *Fish et ux. v. Kaye,* 134 Pa. Superior Ct. 49, 4 A. 2d 190. No attempt whatever was made by the appellant to meet this burden of proof. If he desired to disaffirm the lease, it was his duty to do so promptly and forthwith surrender the premises. This he failed to do. He cannot at this late date successfully assert that the lease was entered into under misrepresentation or misapprehension, nor may he oc-

cupy and enjoy the possession as he was doing, pay the rent for a period of time, and later set up a defense that no rental is due as he is the owner of the property leased.

It is uniformly recognized that where the relation of landlord and tenant exists, the tenant is estopped to deny his landlord's title: 16 R. C. L. 649, §137. This principle is well stated by Mr. Justice BLACK in *Thayer v. Society of United Brethren,* 20 Pa. 60, 62, 63, as follows: "A lease given in good faith by one party and accepted by another with his eyes open, is valid and binding on both, though the actual occupancy be not changed. It creates the relation of landlord and tenant. It is a solemn admission of the lessor's title. It disarms him, of the power to take possession during the term, and therefore ought to be conclusive of his right to do so afterwards. The mere fact that the tenant has a better title than his landlord does not of itself raise the presumption that the lease was a fraud or accepted by mistake. The lease is not rendered void by proving title in the lessee."

The Supreme Court, in *Farmers Deposit Natl. Bank v. Western Pa. Fuel Co.,* 215 Pa. 115, 117, 64 A. 374, cited with approval a statement in Trickett on Landlord and Tenant in Pennsylvania, §756, to the effect that the tenant by entering possession of premises in pursuance of a lease precludes himself from refusing to pay the rent on account of defects in the title of the lessor. He may be compelled to pay the rent despite any defects and proof therefore of such defects is irrelevant and inadmissible in an action of assumpsit for the rent. See, also, *Hamilton v. Pittock,* 158 Pa. 457, 27 A. 1079.

No sufficient reason has been advanced for disturbing the disposition of this case by Judge BOOSE.

Decree is affirmed, at appellant's costs.