ARK. LA. GAS CO. *v.* EVANS.

5-2148 338 S. W. 2d 666

Opinion delivered October 3, 1960.

*Daily & Woods,* by *James E. West,* and *Blanchard, Goldstein, Walker & O'Quin,* Shreveport, La., for appellants.

*Sexton & Holland,* by *Sam Sexton, Jr.,* for appellee.

GEORGE ROSE SMITH, J. The basic question here is whether the lessee of an oil and gas lease is estopped to deny the title of the lessor, especially when the lease contains a clause requiring payment of royalties to the lessor only to the extent of his mineral ownership. The chancellor held that the ordinary rule of estoppel as between landlord and tenant is applicable to oil and gas leases. Upon that premise he required the appellants, as lessees, to pay royalties to the appellee, their lessor, who holds only a void tax title to the minerals within the 120 acres covered by the lease.

The facts are these: In 1935 the Missouri-Pacific Railroad Company owned the minerals in question and paid the taxes for that year in the Charleston district of Franklin county, where the land is located. By mistake, however, the same mineral rights were also assessed on the tax books in the Ozark district of the county and were erroneously sold and certified to the State for nonpayment of the taxes. It is settled, of course, that a tax sale is void if the taxes have actually been paid. *Spradling* v. *Green*, 226 Ark. 420, 290 S. W. 2d 430.

In July of 1947 the appellee, for a consideration of $3.92, purchased the State's tax title, which, as we have indicated, was void. Two months later the appellee executed an oil and gas lease to one of the appellants, Arkansas Louisiana Gas Company, purporting to cover these minerals. In December of 1947 the lessee conveyed a half interest in the lease to Arkansas-Oklahoma Gas Company, and in 1954 the latter's interest was acquired by Stephens Production Company, a partnership composed of the appellants W. R. Stephens, J. T. Stephens, and Vernon Giss. In 1955 the original lease was superseded by a new lease that was executed by the appellee to Arkansas Louisiana Gas Company and Stephens Production Company. It may be observed in passing that under the two leases the appellee has collected a total of some eight hundred or nine hundred dollars, as delay rentals.

Both the leases executed by the appellee were for a term of ten years and as long thereafter as oil or gas is produced, and both leases contained this reduction clause: "Lessor hereby warrants and agrees to defend the title to said land . . . . Without impairment of Lessee's right under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid Lessor shall be reduced proportionately." The 1955 lease was still in force when the present suit was filed by the appellee on October 2, 1958.

Not only do the appellants hold a lease from the appellee; they also hold a lease from the real owner of the minerals. In 1952 Arkansas-Oklahoma Gas Company

acquired an oil and gas lease from the Missouri-Pacific, covering extensive acreage including the land now in controversy, and later that year Arkansas-Oklahoma conveyed a half interest in the lease to the appellant Arkansas Louisiana Gas Company. In 1954 Arkansas-Oklahoma's half interest was acquired by Stephens Production Company. Thus the appellant lessees hold two leases upon these minerals, one from the appellee, whose tax title is invalid, and one from the Missouri-Pacific, which was the true owner when it leased the property.

In May of 1958 Stephens, Inc., a corporation owned by the two Stephenses, purchased from the Missouri-Pacific more than 2,900 acres of mineral rights in and near Franklin county, including the 120 acres now in dispute. The purchase price of $112,251 was based upon an independent appraisal previously procured by the Missouri-Pacific, and according to that appraisal $9,000 of the total value was allocated to these 120 acres. In making the purchase Stephens, Inc., took the title in the name of the remaining appellant, J. A. Carter, as trustee.

It was not until 1958 that the lessees began drilling operations. The acreage now in controversy was unitized with other lands, and in August of 1958 the lessees completed a producing gas well upon other land within the unitized block. The appellee then filed this suit, asserting that the lessees are estopped to deny his title and must therefore pay him royalties upon that part of the gas production that is attributable, under the unitization agreement, to the 120 acres in question. The chancellor upheld the theory of estoppel and entered a decree requiring the lessees to account to the appellee for his share of the royalties. The practical effect of the decree is to compel the lessees to pay full royalties to both lessors.

Counsel for the appellee opens his brief by contending that the issue of estoppel is to be determined by the law of Louisiana, because the appellee's lease to the appellants was executed and delivered in that state. We are inclined to believe that the Louisiana courts do not consider an oil and gas lessee to be estopped to deny his lessor's title, so that the Louisiana law is actually unfavorable to the

appellee. See *Nabors Oil & Gas Co.* v. *La. Oil Ref. Co.,* 151 La. 361, 91 So. 765; *Powell* v. *Rapides Parish Police Jury,* 165 La. 490, 115 So. 667; and *Gulf Ref. Co. of La.* v. *Glassell,* 186 La. 190, 171 So. 846, as later explained in *Serio* v. *Chadwick,* La. App., 66 So. 2d 9. We do not, however, rest our decision upon the law of Louisiana, for we think it plain that the issue is to be determined by the law of Arkansas, where the land lies.

''Covenants to pay royalties run with the land so that an assignee of a royalty interest is entitled to receive the royalty from the lessee or his assignee.'' *Standard Oil Co. of La.* v. *Craig,* 202 Ark. 168, 150 S. W. 2d 744. It is an established principle that covenants which run with the land are governed by the law of the state where the land is. *Beauchamp* v. *Bertig,* 90 Ark. 351, 119 S. W. 75, 23 LRANS 659; Rest., Conflict of Laws, § 341. As Leflar explains in his work on Conflict of Laws (1959), § 144: ''Those [covenants] which run with the land . . . create more than an *in personam* right, since they attach themselves to the land and are transferred as a part of the ownership of the land to all subsequent takers thereof. For that reason their existence, nature and effect are all determined by the law of the place where the land is located.''

The rights and the duties that arise from a covenant to pay royalties are not personal to the contracting parties; they run with the land and apply with equal force to successors in interest of either the lessor or the lessee. If the rule of estoppel as between landlord and tenant applies to this situation it has a substantive effect upon the rights of the parties and thus really determines the extent of their interest in the land. The law rightly holds, both as a matter of logic and as a matter of convenience and uniformity, that such questions are governed by the law of the place where the land lies.

Coming then to the principal issue, which is a matter of first impression in Arkansas, we are firmly of the view that the doctrine of estoppel does not apply in the present case.

The inability of an ordinary tenant to deny his landlord's title ultimately goes back to basic considerations of good faith and fair dealing. Thompson gives the reason for the rule in his work on Real Property (Perm. Ed.), § 1735: "On becoming tenant of land under another, the tenant, in contemplation of law and on grounds of public policy and in maintenance of sound morals and good faith, undertakes to preserve the possession of the landlord and redeliver it, and he can not do otherwise without a violation of faith." Later on the author adds: "The rule that a lessee holding possession by virtue of a lease can not dispute the title of his lessor does not apply to an ordinary mining lease, which is more like a sale than a lease." *Ibid.*, § 1745.

There are compelling reasons for recognizing a distinction between the two situations. In the usual case a tenant of business property or farm land is not concerned with any question of title. All he pays for is the right of possession, and if his occupancy is undisturbed he has no ground for complaint. To permit him to question his landlord's title would prevent the latter from bringing an action to collect the rent except at the risk of placing his title in jeopardy. See Tiffany, Real Property (3d Ed.), § 135. On the other hand, if the lease should give the tenant an option to purchase the property it cannot be doubted that he would be allowed to question his landlord's title to the extent of insisting that a merchantable title be conveyed.

A mineral lessee is unquestionably more in the position of a purchaser than in that of a mere occupant of the land. By our law an oil and gas lease conveys to the lessee an interest in the land. *Clark* v. *Dennis,* 172 Ark. 1096, 291 S. W. 807. Unlike an ordinary tenant a mineral lessee is not concerned with possession alone. He does not merely undertake, as Thompson observes, *supra,* "to preserve the possession of the landlord and redeliver it." Instead, both parties to the lease intend and hope that the lessee will redeliver the premises only after the oil, gas, coal, or other minerals have been removed, with payment of royalties to the lessor. Thus the lessee is a purchaser

as well as an occupant, and in this situation considerations of good faith and fair dealing require that the lessor have good title to the minerals for which he is receiving a royalty.

If we had any feeling of doubt in the case at bar that doubt would be set at rest by the fact that the appellee's lease contained the reduction clause quoted above. "In the cases involving this type of clause it has been uniformly held that if there is a failure of the lessor's title he is entitled only to a proportionate interest in the rents and royalties and that the lessee is not estopped from taking leases from adverse claimants on the theory that a lessee cannot deny his landlord's title." Summers, Oil & Gas (Perm. Ed.), § 609.2. It is plain enough that the parties, by inserting the reduction clause in the lease, recognize the lessee's right to question the lessor's title, and thus they eliminate by contract any possibility of estoppel. Indeed, counsel for the appellee recognizes the controlling force of this clause and merely argues that it should not be applied where, as here, the lessor has no title whatever. In short it is contended that if the appellee owned only one per cent of the fee simple he would be entitled to only one per cent of the royalties, but since he owns no valid interest at all he should be entitled to one hundred per cent of the royalties. This argument does not require an extended answer.

Only one other matter need be mentioned. The appellants requested, in substance, that the appellee admit that the appellant Carter, as trustee, is the owner of the minerals in question. The appellee, by failing to answer the request, admitted the truth of the appellants' assertion. Ark. Stats. 1947, § 28-358; *Brown* v. *Lewis,* 231 Ark. 976, 334 S. W. 2d 225. The record also shows that the appellee's tax title is void, as the taxes for 1935 were paid in the Charleston district. It follows that the appellants are entitled to a decree dismissing the appellee's complaint for want of equity and canceling his tax deed as a cloud upon Carter's title to the minerals. The cause will

therefore be remanded for the entry of a decree to that effect.

Reversed and remanded.