WATKINS, Judge.
This is an action brought by Charles J. Watson and Amber Achord Watson against Mineral Exchange, Inc. and Dexter Manual, agent of Mineral Exchange, to obtain the amount of a draft issued as a bonus on a mineral lease. Judgment was rendered for the Watsons and against Mineral Exchange in the amount of the draft, $14,-450.00. Manual was dismissed as a party defendant. From this judgment, Mineral Exchange has appealed. We reverse the judgment of the trial court, and dismiss plaintiffs’ suit.
The draft, in the sum of $14,450.00, contained the following language: “The payor shall have 80 days after the receipt of this draft by the collecting bank, whether accompanied by other papers or not, for title examination.” The draft was deposited with the First State Bank & Trust Co., Baker, Louisiana, for collection, and was not honored by Mineral Exchange. The primary term of a mineral lease executed by the Watsons in favor of Shell Oil Company and covering the same land had expired of its own terms approximately one month before the lease to Mineral Exchange was executed. The lease from the Watsons to Mineral Exchange was executed and the draft dated March 4, 1982. However, the Shell lease provided that it could be continued in effect by pooling. The Shell lease contained no Pugh clause. It appears from uncontradicted testimony at trial that a portion of the tract leased to Mineral Exchange under the March 4, 1982 lease, could have been in a portion of any of four pooling units under the Shell lease. Furthermore, other testimony, in like manner uncontradicted, indicated that the question of whether the Watsons’ tract was included in the Shell pooling units could be determined conclusively only by a survey on the ground, which would cost between $50,000.00 and $100,000.00. While we consider the sum exhorbitant, we find the ex *16 tent of the pooling units could be determined only by a substantial expenditure of money.
The trial court found a letter from the Watsons to Shell Oil Company, which Manual, the agent of Mineral Exchange had prepared for the Watsons to sign, proved that Mineral Exchange undertook to cure the title defects, and that the failure of Mineral Exchange to diligently proceed made the draft fully enforceable. The letter read as follows:
March 22, 1982
Shell Oil Co.
P.O. Box 60193 New Orleans, LA 70160 Dear Sirs:
Your company was granted an Oil, Gas and Mineral Lease on my property located in Section 51, Township 5 South, Range 1 East, East Baton Rouge Parish, Louisiana on February 2, 1977.
The lease was for a 5 year primary term, beginning February 2, 1977 thus expiring February 2, 1982.
Since the terms of the lease were not met by your company, in regards to production established and subsequently placing our property in a pooled production unit, we therefore request by return mail a recordable release of the said lease.
Thank you for your cooperation.
Sincerely, /s/ Charles J. Watson Charles J. Watson 1854 Dallas Drive Baton Rouge, LA 70806
The return address given in the letter was that of Mineral Exchange. Shell failed to reply to the letter. Consequently, at the end of the thirty day period provided in the Mineral Exchange draft, Mineral Exchange refused to honor the draft, taking the position that the existing mineral lease in favor of Shell constituted a bar to Mineral Exchange enjoying the benefits of its mineral lease.
The existence of the Shell lease on the public records left no doubt that there was a title problem with regard to the mineral interest of the Watson tract. It appears that the main question presented on appeal is whether the burden of undertaking the necessary curative work in the present case should be imposed upon Mineral Exchange or upon the Watsons. We find that the burden of undertaking curative work in the present case was on the Watsons.
The trial court in written reasons found that by preparing the letter quoted above, Mineral Exchange undertook to perform curative title work, i.e., obtaining a release of the Shell lease. We find this holding to have been in error. The letter was not a part of the lease contract. The condition stated in the draft that the draft was to be collected only after title examination constituted a condition of the lease that the bonus was payable only if title were free from defect. See, St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983). The title contained a defect, the possibility the prior lease to Shell remained in effect. The landowners could have invoked the provisions of LSA-R.S. 31:206, et seq. if they had in good faith believed that the prior Shell lease had terminated. They failed to do so. They must bear the consequences of that failure, as it would be quite simple to determine from Shell whether Shell considered its lease still in effect. Mineral Exchange cannot be expected in the present case to assume the burden that the Mineral Code imposes upon the landowners. The burden of undertaking this type of curative work was on the Watsons, not Mineral Exchange.
The Watsons, however, contend that under Paragraph 10 of their lease to Mineral Exchange, the rent and royalties were to be reduced proportionately if they could not lease all the land. This argument is without merit. The pertinent clause in Paragraph 10 of the Mineral Exchange lease reads as follows:
“... if lessor owns less than the entire undivided interest in all or any portion of the lands or mineral rights relating thereto (whether such interest is herein specified or not) rentals and royalties as to the land in which an interest is out *17 standing in others shall be reduced proportionately to the interest of the lessor therein, ...”
It can be seen that the quoted portion of Paragraph 10 provides simply that a pro rata portion will be paid if the mineral lessor owns less than fhe entire undivided interest. There is no problem of ownership in indivisión in the present case, and hence the clause is inapplicable.
As the Watsons bore the burden of curing the mineral title in the present case, and as they failed to correct the title problem with respect to minerals, the draft, we hold, was properly dishonored.
Accordingly, the judgment of the trial court is reversed, and plaintiffs’ suit dismissed, at plaintiffs’ cost.
REVERSED.