551 A.2d 226

Glenn C. KEPPLE and Nora G. Kepple, his Wife, Appellants,

v.

FAIRMAN DRILLING COMPANY, a Partnership.

Superior Court of Pennsylvania.

Argued Sept. 1, 1988.

Filed Nov. 2, 1988.

Reargument Denied Dec. 29, 1988.

54

George A. Conti, Jr., Greensburg, for appellants.

Anthony W. DeBernardo, Jr., Greensburg, for appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment entered by the Court of Common Pleas of Westmoreland County in favor of appellee Fairman Drilling Company and against the appellants, Glenn C. and Nora G. Kepple, and from an order requiring an audit and accounting of royalties owed by Fairman Drilling Company to the Kepples and others.

The appellants, the Kepples, leased gas and oil rights which they believed to be attached to twenty five acres owned by them to Fairman Drilling Company in August of 1978. They had acquired the property from Cecelia and Florence Burkley in 1971, subject to "conveyances of mineral rights as set forth in prior instruments of record or apparent on the ground." The Kepples were unaware of the fact[1] that the mineral rights to the Burkley land, including the parcel which they had purchased, were subject to a previous lease held by Peoples Natural Gas Company [Peoples Natural Gas] entered into by the Burkleys in May of 1957. The lease was to run for ten years, but included a provision which stated that it would continue in effect after that ten year period for as long as that land, or any portion of it, or any other land with which it had been pooled or unitized, was being explored for gas or oil by Peoples Natural Gas, was being used to hold gas or oil in storage, or was being used to produce gas or oil by that company. In 1964, the Burkley property was unitized with another tract of land owned by Rose E. White where a deep gas well had been drilled [the White well]. A shallow gas well [the

---

1. Although all deeds, conveyances, leases and agreements in the chain of title of the mineral rights had been recorded, and although the Kepples had had a title search done, they seem to have been unaware of the fact that the prior lease to Peoples Natural Gas was continuing under its pooling provision.

Burkley well] was later drilled in 1978 on the remaining Burkley property after a series of conveyances which included the conveyance to the Kepples.

Fairman entered onto the Kepple property, and began operations. At this point, Peoples Natural Gas informed Fairman that it, in fact, held the interest in the oil and gas rights to the Kepple property. The two companies then negotiated a "farm out" agreement, which permitted Fairman to drill two shallow gas wells on the Kepple property, and provided that Peoples Natural Gas would buy the gas produced by those wells.

Peoples Natural Gas then wrote to the Kepples and informed them that it was in possession of a title report which indicated that the Kepples possessed a twenty-five percent interest in the lease of the mineral rights from the Burkleys to Peoples Natural Gas. It stated that it would pay the Kepples proportionate royalties from the Burkley well and from the White well. The company indicated that the proportion of the royalty owing to the Kepples from shallow wells amounted to 41.7585% (this included the Burkley well), while the proportion of the royalty from deep wells (in this case, the White well was the only deep well) was 6.8776%. Peoples Natural Gas also informed Fairman that the Kepples were to receive 41.7585% of the royalty from any shallow wells. Fairman has consistently paid into an escrow account 41.7585% of the total royalties from the two shallow wells it has drilled. The total royalty from those two wells purportedly equals one-eighth of the value of the gas extracted from those wells.

Two lawsuits were filed, one in equity by Robert Bricmont, seeking an accounting and a determination of the royalties owed to the Burkley assignees,[2] and one in assumpsit by the Kepples, claiming that they were owed the full one-eighth royalty for all gas removed from their

---

**2.** Cecelia Burkley died in August of 1978, and her estate was devised by will to her sister, Florence. In 1983, Florence assigned all her interest in the property subject to the lease with Peoples Natural Gas, and all royalties due from that lease, to George, Robert, and Francis Bricmont, Rose Quallich, and Jean Cherry.

property. These suits were consolidated and heard before the Honorable Charles H. Loughran, sitting without a jury. The judge made extensive findings of fact, and held that Fairman owed a proportionate amount of the royalty from the wells on the Kepple property to various persons, including the Burkley assignees, and that the Kepples were not entitled to the full one-eighth royalty from those wells. The judge then ordered an audit and an accounting to determine the proper payments to each party.

The Kepples filed a motion for post-trial relief requesting that the order of the court be reversed, consolidated with exceptions to the trial court's findings of fact. The motion and exceptions were denied. After judgment was entered on the verdict in the assumpsit claim, the Kepples appealed to this court.

The Kepples claim on appeal that they were denied due process of law and that the trial court abused its discretion in failing to include in its findings of fact relevant and material evidence. They also argue that the trial court erred in holding that Fairman was not estopped from denying that the lease from the Kepples to Fairman purportedly conveying an interest in oil and gas rights was a valid lease. Lastly, the Kepples complain that the trial court erred in relying on the proportionate reduction clause and the warranty clause in its determination that the doctrine of estoppel was inapplicable. Because we find that there is no merit to any of the arguments raised by the Kepples, we affirm the orders of the trial court.

The Kepples argue that the trial court failed to include findings of fact suggested by them which they insist would go to prove their claim of estoppel. They argue that Fairman, as their tenant, could not question their title, as his landlords, in the oil and gas rights appurtenant to their property. Because the court failed to include in its findings any fact which would go to the estoppel issue, the Kepples insist that they were denied due process of law and a fair trial. They complain that "[h]alf of the evidence presented was not reduced to findings of fact nor considered by the

trial court." For this reason, according to the Kepples, the findings of fact are not supported by the evidence.

▉ The findings of fact of a trial court sitting without a jury are accorded the same weight and effect on appeal as the verdict of a jury. Those findings will not be disturbed on appeal unless they are unsupported by competent evidence, or are predicated on an error of law. *Cover v. Cushing Capital Corp.*, 344 Pa.Super. 593, 598, 497 A.2d 249, 252 (1985); *Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 524, 463 A.2d 1017, 1021 (1983).

The Kepples do not argue that the findings of fact made by the trial court did not arise from competent evidence. Indeed, an examination of the record indicates that they are supported by facts of record. The Kepples argue instead that the trial court should have included certain findings of fact which would have tended to prove their estoppel argument. Pennsylvania Rule of Civil Procedure 1516 states in part that "[n]o requests for findings of fact and conclusions of law may be submitted except by leave of court. *The requests may be treated by the court as suggestions.*" Pa.R.Civ.P. 1516 (emphasis added). The clear language of the rule states that proposed findings of fact *may* be treated as *suggestions* by the trial court. The trial court in this case decided not to accept the findings of fact as offered by the Kepples, and found no need to include findings concerning "the actions of Peoples [Natural Gas] vis-a-vis the owners, the Peoples [Natural Gas] and Fairman title reports, Fairman's actions under the Drilling Agreement, the Fairman payments to Kepple[,] and the Kepple title report," because it had determined that estoppel was not an issue in the case.

▉ The decision not to accept the Kepples' proposed findings of fact was well within the discretion of the trial court. A mere error of judgment does not rise to abuse of discretion; it is only where the trial court, in reaching its conclusion, has overridden or misapplied the law, or where the judgment is manifestly unreasonable, or the result of

prejudice, partiality, bias, or ill will illustrated by the record, that it will be found to have abused its discretion. *In re Estate of Cornell*, 336 Pa.Super. 594, 596–97, 486 A.2d 424, 425 (1985), *rev'd on other grounds*, 511 Pa. 475, 515 A.2d 555 (1986). That is not the case here. It was perfectly reasonable for the court to eliminate facts it found were not pertinent to the disposition of the case. The trial court could only have abused its discretion if it misapplied the law, and the doctrine of estoppel was in fact applicable.

■ This is, in effect, what the Kepples argue to us in all the issues they present to us for appeal. Because we agree with the trial court that an estoppel argument was inapplicable in this case, we find that the trial court committed no error of law in excluding those facts which, ostensibly, would have tended to prove that argument.

The Kepples argue that the trial court erred in finding the doctrine of estoppel arising out of landlord/tenant law inapplicable in this case. The trial court held that the Kepples' promise to convey full interest in the oil and gas rights appurtenant to their property was consideration for Fairman's promise to pay a full one-eighth royalty to them. The court then held that that consideration had failed because of the prior existing lease from the Burkleys to Peoples Natural Gas. Therefore, Fairman was excused from the promise to pay the full royalty. The Kepples contend that Fairman should not have been permitted to raise the invalidity of the oil and gas lease based on the prior lease because Fairman, as a tenant, was estopped from questioning the title of its landlords, the Kepples. They argue that principles of landlord/tenant law should apply to a situation involving an oil and gas lease and cite *Silvis v. Peoples Natural Gas Co.*, 386 Pa. 453, 126 A.2d 706 (1956), *Hamilton v. Pittock*, 158 Pa. 457, 27 A. 1079 (1893), *Babcock Lumber Company v. Allison*, 136 Pa.Super. 353, 7 A.2d 374 (1939), and *MacDonald v. O'Neil*, 21 Pa.Super. 364 (1902), in support of their arguments.

A close examination of these cases indicates that they do not directly support the Kepples' contentions. Any support

the Kepples may have gleaned from these cases comes only from dicta. See *Silvis,* 386 Pa. at 460–461, 126 A.2d at 709 (court did not reach issue of whether doctrine of estoppel applied because it found no landlord/tenant relationship existed under facts of case); *Hamilton,* 158 Pa. at 458, 27 A. at 1080–81 (court upheld jury charge which stated that title dispute between two branches of one family was not in issue, and that question for jury to decide was whether or not the well in question was on land included in one of the leases); *MacDonald,* 21 Pa.Super. at 366 (court did not specifically apply estoppel doctrine in holding of the case, but only used it to suggest an alternative basis for disposition). The one case cited by the Kepples which directly applies the landlord/tenant principle that a tenant is estopped from denying the title of his/her landlord is distinguishable from the situation before us. In *Babcock Lumber Co. v. Allison, supra,* the court did not apply that rule to an oil and gas lease, but rather to a lease agreement for a group of buildings. *Babcock Lumber Co.,* 136 Pa.Super. at 358, 7 A.2d at 376. The Kepples have failed to cite us any persuasive authority why this estoppel doctrine should apply in a case involving the lease, not of buildings, but of gas and oil rights. We find more persuasive those cases from other jurisdictions which hold that, in such situations, the law of landlord/tenant should not apply.

In *Arkansas Louisiana Gas Co. v. Evans,* 232 Ark. 495, 338 S.W.2d 666 (1960), the appellee, Evans, bought a void tax title, and thereafter executed a lease of the mineral rights to appellant Arkansas Louisiana Gas Company. Arkansas Louisiana in turn assigned one-half its interest to Arkansas Oklahoma Gas Company, which, in turn, assigned its interest to Stephens Production Company. At the expiration of that lease, Evans again leased the rights to Arkansas Louisiana and Stephens. That lease contained a proportionate reduction clause. Arkansas Louisiana also held a lease from the real owner of the property. Arkansas Louisiana refused to pay the royalty owed to Evans, claiming that his lease was invalid. Evans argued that he was entitled to the full royalty from the appellants for his

interest regardless of the invalid lease, and that the appellants, as his tenants, were estopped from questioning his title.

The Arkansas court rejected the argument that landlord/tenant law should apply in situations which involved the lease of mineral rights, distinguishing the rationale behind estopping a tenant from questioning a landlord's title from the purpose served in permitting the mineral lessee to question the title of his or her lessor. In a landlord/tenant situation, according to the court, the tenant is estopped from questioning the landlord's title because he or she is only concerned with possession, and as long as that is undisturbed, the tenant has no complaint. Further, the tenant, in taking a lease, undertakes to deliver the premises back intact. Therefore, for the tenant to question title would be a breach of good faith on his or her part. The court reasoned that if, however, the tenant had an option to buy, he or she would be permitted to question title. The court then found that a lessee under a lease of mineral rights was more in the position of a purchaser under a sales agreement than that of a tenant under a lease:

A mineral lessee is unquestionably more in the position of a purchaser than in that of a mere occupant of the land. By our law, an oil and gas lease conveys to the lessee an interest in the land.... Unlike an ordinary tenant, a mineral lessee is not concerned with possession alone. He does not merely undertake ... "to preserve the possession of the landlord and redeliver it." Instead, both parties to the lease intend and hope that the lessee will redeliver the premises only after the oil, gas, coal, or other minerals have been removed with payment of royalties to the lessor. Thus the lessee is a purchaser as well as an occupant, and in this situation considerations of good faith and fair dealing require that the lessor have good title to the minerals for which he is receiving a royalty.

*Id.* at 499–500, 338 S.W.2d 669. *See also Cross v. Lowrey,* —— Ala. ——, ——, 404 So.2d 645, 647–48 (1981) (adopting the *Evans* rationale, and holding that landlord/tenant law is inapplicable to the lease of mineral rights).

■ We find the rationale of the Arkansas court to be persuasive, and adopt it in our determination of the case before us. Because the lessee is a purchaser of the mineral rights, as well as an occupant of the land, we find that the rationale behind the estoppel doctrine of landlord/tenant law serves no purpose here. No considerations of good faith and fair dealing are destroyed when the lessee of a mineral lease questions the lessor's title.

■ Further, we agree with the trial court and with the *Evans* court that the inclusion of a proportionate reduction clause in the lease agreement would support this determination. "The proportionate reduction clause or lesser interest clause is inserted in an oil and gas lease for the lessee's protection in case it is later found that the lease covers a smaller interest in the minerals than the lessee believed it was leasing." R. Hemmingway, *Law of Oil and Gas* § 7.8 (2d ed. 1983). The existence of such a clause permits the lessee to reduce the royalty and rental payments to correspond to the interest actually owned by the lessor. *Id.;* 3A W. Sommers, *The Law of Oil and Gas* § 609.2 (Flittie Supp.1987). Clearly, the presence of such a clause in a lease agreement implies that the title of the lessor is not inviolate. "[I]f there is a failure of the lessor's title he is entitled only to a proportionate interest in the rents and royalties and ... the lessee is not estopped from taking leases from adverse claimants on the theory that a lessee cannot deny his landlord's title." Sommers, *supra* at § 609.2. Under a lease containing a proportionate reduction clause, that title may be questioned, and payments reduced accordingly.

The agreement between Fairman and the Kepples included a proportionate reduction clause. That clause stated:

If gas only is found, second party agrees to pay at the rate of one-eighth (⅛) of the gross proceeds at the pre-

vailing market rate at the mouth of the well per annum payable quarterly, for the product of each well while the same is being used off the premises and marketed, and *any interest in said gas heretofore conveyed or reserved shall be paid for proportionately out of said amount of gas royalty.*

(emphasis added). The Kepples argue that the proportionate reduction clause is not applicable to a situation where, as here, the total interest is owned by the lessor, but is subject to a prior lease. They argue that this was the case in *Watson v. Manual,* 467 So.2d 15 (La.App.1985),[3] and on those facts, the Louisiana court found the proportionate reduction clause inapplicable. In view of our discussion, *supra,* we must reject the contention that the proportionate reduction clause is inapplicable in this situation, and we find that the Kepples' construction of the *Watson* case is somewhat oversimplified.[4]

In *Watson,* the Watsons had leased mineral rights to Shell Oil Company under an agreement which provided that the lease could be extended in the event of pooling. After a period during which the lease would have expired had pooling not occurred, the Watsons leased the mineral rights to Mineral Exchange, for which Manuel was an agent. Mineral Exchange issued a draft as a bonus on that lease, containing language which provided thirty days for a title

**3.** The Kepples also cite *Southern Oil & Gas, Inc. v. Hall,* 485 So.2d 1066 (Miss.1985), however, this case involved a determination by the chancellor that both parties had acted under a mutual mistake in assuming the interest in question was not subject to a pre-existing lease. The appellate court determined that the chancellor had not erred in fashioning the remedy. *Id.* at 1067–68. We do not see the relevance of this holding to the present case.

**4.** The Kepples have not argued to us that the proportionate reduction clause should not have been applied to reduce their royalty, but rather that it was inapplicable to bolster the trial court's finding that the estoppel doctrine was not applicable here. We do recognize, however, that the Kepples' entire argument goes to a question of whether the court improperly divided the full one-eighth royalty. In that context, the argument that the proportionate reduction clause is invalid under these facts should be addressed. We find that *Watson v. Manuel,* discussed *infra,* supports the conclusion that the royalty was properly divided.

search. During that time, Mineral Exchange became aware of the prior lease and refused to pay the bonus. At trial, there was testimony which indicated that a portion of the tract leased to Mineral Exchange could have been included in any of four pooling units under the Shell lease.

The appellate court concluded that the only way in which that issue could have been determined conclusively was to survey the ground, and that the burden of conducting such a survey was on the Watsons. It therefore reversed the decision of the trial court granting judgment for the Watsons, and dismissed the suit. *Watson*, 467 So.2d at 16. The Watsons had also argued, however, that they were in any case entitled to a proportionate royalty and rent from Mineral Exchange due to the proportionate reduction clause in the lease agreement. The court stated that since the clause provided that the payments would be reduced proportionately if "lessor owns less than the entire undivided interest in all or any portion of the lands or mineral rights relating thereto ...," and since there was no question of undivided ownership in that case, the clause was inapplicable. *Id.* at 17.

■ Unlike the Watsons, the Kepples did not have an undivided interest in the mineral rights relating to their land. In the case before us, the Burkleys originally leased the oil and gas rights in question to Peoples Natural Gas. The conveyance of property to the Kepples was subject to all conveyances of mineral rights through prior leases, and was, in fact, subject to the Peoples Natural Gas lease. The interest owned by the Kepples was merely a portion of the interest in the oil and gas rights attached to the pooled land. The Kepples acquired their land and any appurtenant mineral rights *after the pooling.* In the *Watson* case, Shell Oil also pooled the land in which it held an interest, but the Watsons had owned that land and the interests in it *prior to the pooling.* Unlike the Kepples, the Watsons did not obtain a lesser interest in the mineral rights attaching land because of the pooling. Because the interest in the mineral

right owned by the Kepples devolved to them after the pooling, their interest was never undivided.

In any case, *Watson* is not persuasive precedent, and we decline to follow it. We agree with the trial court that the proportionate reduction clause is applicable in this case, and that it tends to show that title could in fact be questioned by the lessee, Fairman Drilling Company.

We find therefore, that the trial court did not err in holding that the doctrine of estoppel was inapplicable here, and that therefore there was no error in the trial court's determination that facts which would ostensibly show estoppel were therefore irrelevant.

AFFIRMED.