605 A.2d 405

COMMONWEALTH of Pennsylvania, Appellee,

v.

Myron LEIGHOW, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 20, 1991.

Filed March 25, 1992.

Peter J. Hill, Bloomsburg, for appellant.

Scott W. Naus, Dist. Atty., Bloomsburg, for Com.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from judgment of sentence entered January 18, 1990, in the Court of Common Pleas of Columbia County, following appellant's conviction on the charge of criminal homicide. Appellant raises three issues on appeal: 1) Whether the lower court erred in denying his pre-trial motions for a change of venue or venire; 2) Whether the lower court erred in precluding appellant from entering testimony to impeach the credibility of one of the Commonwealth's witnesses; and 3) Whether the lower court erred in denying appellant's motion for a mistrial on the ground that the Commonwealth withheld exculpatory or favorable evidence from appellant when it failed to disclose to him that a State Police scuba team had dragged the Montour Preserve

Lake but did not find the murder weapon. Having reviewed the record and the parties' briefs, we affirm.

The relevant facts are as follows: In the early morning of July 16, 1987, Lee Creasy was shot in the back while on the porch of his home. Creasy died as a result of this wound. Police arrested appellant, a co-worker and friend of the victim, and charged him with Creasy's murder. Following a trial, a jury found appellant guilty of murder in the first degree.

Appellant contends that, in view of the publicity which his case received, the court below erred in denying his motions for a change of venue or venire. We disagree.

Our standard of review is clear. As we stated in *Commonwealth v. Patterson*, 392 Pa.Super. 331, 572 A.2d 1258 (1990): "The grant or refusal of a change of venue is within the sound discretion of the trial court, which is in the best position to assess the community feeling, and it will not be disturbed absent an abuse of discretion." *Id.*, 392 Pa.Superior Ct. at 349, 572 A.2d at 1268.

In *Commonwealth v. Breakiron*, 524 Pa. 282, 571 A.2d 1035 (1990), our Supreme Court stated that, absent any showing of prejudice, when determining whether a new trial is required due to pre-trial publicity, we must consider the following factors:

1. Whether pre-trial publicity was inherently prejudicial;

2. Whether pre-trial publicity saturated the community;

3. Whether there was a sufficient proximity in time between the publicity and the selection of a jury such that the community from which the jury was drawn did not have an opportunity to 'cool down' from the effects of the publicity, thus making a fair trial in this community impossible. If all of these questions are answered in the affirmative, a new trial is required. If any question is answered negatively, it was not improper to refuse the request for a change of venue.

*Id.*, 524 Pa. at 287, 571 A.2d at 1037 (quoting *Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983)).

The *Breakiron* court defined "inherently prejudicial" publicity as

> 'publicity which is harmful to the accused, and which may or may not require a change of venue depending upon what effect it has had in the community from which prospective jurors are drawn.' Factors to consider in the determination as to whether publicity is inherently prejudicial include: 'whether the pre-trial publicity was, on the one hand, factual and objective, or, on the other hand, consisted of sensational, inflammatory and 'slanted articles demanding conviction' ...; whether the pre-trial publicity revealed the existence of the accused's prior criminal record; whether it referred to confessions, admissions or reenactments of the crime by the defendant; and whether such information is the product of reports by the police and prosecutorial officers.

*Id.*, 524 Pa. at 287–88, 571 A.2d at 1037 (quoting *Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983)).

Instantly, the publicity which appellant claims was prejudicial was in the form of newspaper articles, television and radio reports. These articles and reports may be separated into two categories: 1) Those made within months of the shooting; and 2) those made within days of appellant's trial. We will address both of these categories.

Applying the first of the criteria enunciated in *Breakiron, supra,* we note that the articles and newscasts published in the fall of 1987 and spring of 1988 make reference to appellant's criminal record and his relationship with the victim's wife. It is clear from our review of these media reports that they were "inherently prejudicial" under *Breakiron.*

Next, we must determine "whether such publicity has been so extensive, so sustained and so pervasive that the community must be deemed to have been saturated with it." *Breakiron, supra,* 524 Pa. at 288, 571 A.2d at 1037. At appellant's preliminary hearing, his counsel presented evidence of the frequency of the news reports and the size of

the audience that the various media reach. In view of the media attention given to this case, as demonstrated by this evidence, we find it reasonable to conclude that the community had, in fact, been "saturated" by this publicity.

Last, we must determine whether there was an adequate "cooling off" period. As our Supreme Court stated in *Breakiron:*

> In testing whether there has been a sufficient cooling period, a court must investigate what the panel of prospective jurors has said about its exposure to publicity in question. This is one indication of whether the cooling period has been sufficient. Thus, in determining the efficacy of the cooling period, a court will consider the effects of publicity, something a defendant need not allege or prove.
>
> Although it is conceivable that pretrial publicity could be so extremely damaging that a court might order a change of venue no matter what the prospective jurors said about their ability to hear the case fairly and without bias, that would be a most unusual case. Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective. The discretion of the trial judge is given wide latitude in this area.

*Id.,* 524 Pa. at 288, 571 A.2d at 1037–38 n. 1.

██ Instantly, appellant has not provided us with a transcript of the *voir dire* testimony.[1] However, our review of the Voir Dire Questions of Defendant indicates that appellant's counsel made a thorough inquiry into the prospective jurors' ability to be objective, placing particular emphasis upon their knowledge of media reports of the case both before and after they had been summoned for jury duty.

1. Even if our review of the *voir dire* testimony would reveal evidence to support appellant's contentions, he has waived our consideration of the testimony by failing to include a transcript of the *voir dire* for our review. Pa.R.App.P.1921. *See also, Commonwealth v. Patterson,* 392 Pa.Super. 331, 572 A.2d 1258 (1990).

*Voir Dire Questions of Defendant* at 1–2. As the lower court stated:

> The record will further reveal that the *voir dire* process was long and searching, encompassing several days of individual *voir dire*, which included extensive questioning by defense counsel, who did not exhaust their peremptory challenges. In the course of the *voir dire*, the Court was liberal in granting challenges for cause.

Trial Court Opinion at 3.

In view of the attention which both the lower court and appellant's counsel gave to jury selection, we are satisfied that adequate inquiry was made into "whether the publicity [was] still so fresh in their minds that it ha[d] removed their ability to be objective" and that the lower court did not abuse its discretion in refusing appellant's request for a change of venue or venire.[2] *Breakiron, supra,* 524 Pa. at 288, 571 A.2d at 1038, n. 1. We hold, therefore, under the circumstances *sub judice,* that the period of more than seven months which passed between the time of publication of the last of these media reports and the commencement of jury selection was sufficient to allow the prospective jurors to "cool down" from the effects of this publicity. *See Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976) (six month "cooling off" period sufficient following pretrial publicity).

■ Next, with respect to the publicity which appellant's case received during jury selection, appellant directs our attention to several newspaper articles. These articles describe appellant as a "state parolee" and an "ex-convict" and tell of his "criminal record for local arson in 1983", as well as the "[p]olice [having] said [appellant] had been

---

**2.** In *Kepple v. Fairman Drilling Co.,* 380 Pa.Super. 52, 551 A.2d 226 (1988), we stated:

> A mere error of judgment does not rise to abuse of discretion; it is only where the trial court, in reaching its conclusion, has overridden or misapplied the law, or where the judgment is manifestly unreasonable, or the result of prejudice, partiality, bias, or ill will illustrated by the record, that it will be found to have abused its discretion.

*Id.,* 380 Pa.Superior Ct. at 57–58, 551 A.2d at 229.

having an affair ... with [the victim's] wife, ... who was also arrested as a conspirator in the shooting." Defendant's Third Motion for Change of Venue/Venire, Exhibits 1–3. Arguably, these newspaper accounts meet the definition of "inherently prejudicial" set forth in *Breakiron.*

However, although some of the prospective jurors may have been aware of these articles, we have no basis upon which to conclude that their publication amounted to publicity which was "so extensive, so sustained and so pervasive that the community must be deemed to have been saturated with it." *Breakiron, supra,* 524 Pa. at 288, 571 A.2d at 1037. Further, as stated above, the lower court and appellant's counsel expended considerable effort scrutinizing prospective jurors.[3] Our review of the record gives us no indication that the court below abused its discretion in denying appellant's motions for a change of venue or venire.

■ Next, appellant contends that the lower court erred in refusing to allow Ramona Pegg to testify as to a conversation she had with Samuel Sassaman, the victim's brother-in-law. This contention is without merit.

At trial, Sassaman testified that on the night of the shooting, he went to the home of his neighbor, Ramona Pegg and told her that he had killed Lee Creasy. Sassaman then testified that he later told Ms. Pegg that he *hired* someone to kill Creasy. Trial Transcript at 208–09. When questioned at trial as to his reasons for telling his neighbors of his responsibility for the crime, Sassaman testified that he was trying to protect his mother. Trial Transcript at 195. Sassaman further testified that his mother had threatened him after he had overheard her and appellant planning the shooting. Trial Transcript at 185–87, 190, 195. In addition, Sassaman stated that he lied to police about the crime on several occasions. Trial Transcript at 201–14.

Subsequently, appellant's counsel called Ramona Pegg to testify. When appellant's counsel began to question Ms.

---

**3.** We find the fact that appellant did not exhaust his peremptory challenges to be particularly noteworthy.

Pegg as to what Sassaman had said to her on the night of the shooting, the prosecutor objected on the grounds of the testimony being hearsay and duplicative. At sidebar, appellant's counsel asserted that the witness should be allowed to testify as to what Sassaman had told her since, even if such a statement were hearsay, it would come in under the declaration against interest exception to the hearsay rule. The trial court sustained the Commonwealth's objection. Trial Transcript at 324–25. Appellant asserts that, in spite of the fact that Sassaman admitted that he had told Ms. Pegg and her husband that he killed Lee Creasy, Ms. Pegg could have testified as to the exact nature of the conversation as well as Sassaman's demeanor.

It is well settled that a trial court has discretion to exclude evidence which is cumulative. *Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989). Instantly, the evidence which appellant's counsel sought to elicit from Ramona Pegg had already been established. Sassaman himself testified that he made the admission to Ms. Pegg. Appellant's counsel did not inform the trial judge that he wished to explore Ms. Pegg's recollection of Sassaman's demeanor during her conversation with him. We do not, therefore, find that the lower court abused its discretion in refusing to allow testimony for which no legitimate purpose had been established.

■ Finally, appellant asserts that the lower court erred in denying his request for a mistrial because the Commonwealth withheld exculpatory or favorable evidence from appellant. We disagree.

Before trial, appellant's attorney made a discovery request, seeking, *inter alia*, "[a]ny and all evidence favorable or exculpatory to the above-named accused, which is material either to the issue of guilt or to punishment, which is in the possession or control of the Commonwealth." Appellant's Request for Disclosure and Discovery at 1. Subsequently, appellant, through his attorney, informed the Commonwealth that he "intend[ed] to present an alibi defense and stat[ed] the facts as follows: ... 3. At the time and

date of said offense, Defendant, Myron Leighow, was night-fishing at the Montour County Preserve, Montour County, Pennsylvania...." Notice of Alibi Defense at 1. The Commonwealth did not reveal to appellant's counsel that the Pennsylvania State Police had dragged the Montour Preserve Lake and failed to discover the murder weapon. Nevertheless, in his closing statement to the jury, the attorney for the Commonwealth stated, in part: "I submit to you there is no gun. He told you there was no gun. If he went fishing at all, he didn't throw a line in the water, people." District Attorney Closing Statement at 14–15. Appellant's counsel made a timely objection to the Commonwealth's remarks, and requested that the trial judge declare a mistrial. The judge denied this request. Trial Transcript at 413–16.

Appellant contends that by failing to disclose to his counsel that the Montour County Preserve Lake had been dragged, the Commonwealth violated Pennsylvania Rule of Criminal Procedure 305(B)(1). Rule 305(B)(1) provides, in part:

### B. Disclosure by the Commonwealth

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items. (a) Any evidence favorable to the accused which is material either to guilt or punishment, and which is within the possession or control of the attorney for the Commonwealth;

As we stated in *Commonwealth v. Johnson,* 310 Pa.Super. 385, 456 A.2d 988 (1983):

Pa.R.Crim.P. 305 E gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements. In many cases, ordering a con-

tinuance will be an adequate remedy. This will be so where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise. Sometimes, however, the prejudice will go beyond surprise; if the prejudice is so great that the fairness of the trial has been affected, a new trial should be ordered. *Id.*, 310 Pa.Superior Ct. at 395, 456 A.2d at 993.

Assuming, *arguendo,* that the Commonwealth violated Rule 305(B)(1), appellant has not demonstrated that he was prejudiced by this violation. Evidence that the murder weapon had not been found after the Montour Preserve Lake was dragged would not have exculpated the appellant. Indeed, Sergeant Roger W. Nunkester, one of the investigating police officers, testified on cross-examination by appellant's counsel that the murder weapon had not been found. Trial Transcript at 105. We hold, therefore, that the lower court did not abuse its discretion in denying appellant's request for a mistrial. *See, Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989) (decision whether to declare a mistrial is within the discretion of the trial court and will not be reversed absent an abuse thereof).

Judgment of sentence affirmed.