In re **PARTNERS OIL COMPANY**,
Debtor.

**Bankruptcy No. 95–41493–H3–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Jan. 26, 1998.

Marilee A. Madan, Russell and Madan, Houston, TX, for Partners Oil Company, a Delaware Corp.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has considered the Debtor's Motion for Authorization of Sale of Assets, Including Corporate Entity, Through Auction and Authorizing Auction Procedure (Docket No. 109), and has previously entered an order (Docket No. 150) disposing of the motion in part. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact may be considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law may be considered Findings of Fact, they are adopted as such.

### Findings of Fact

Partners Oil Company ("Debtor") filed a voluntary Chapter 11 petition on March 1, 1995. Debtor's plan was confirmed by order entered October 17, 1995.

The plan provides for the sale of Debtor's assets prior to or subsequent to confirmation. The court has previously entered an order (Docket No. 150) authorizing Debtor to sell items other than the "Stanton Well", a gas well located in Pope County, Arkansas.

The Stanton Well is subject to a Joint Operating Agreement between Essex Exploration, Inc. as operator, and six non-operators. Debtor is a successor in interest to an operating interest previously held by Essex. Weiser–Brown Oil Company ("WBOC") is a non-operator party to the agreement.

The Joint Operating Agreement provides in relevant part:

Each party shall have the right to take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area, exclusive of production which may be used in development and producing operations and in preparing and treating oil for marketing purposes and production unavoidably lost.

(Debtor's Exhibit 3, at p. 6)

Exhibit "E" to the Joint Operating Agreement is a Gas Balancing Agreement, which by its terms automatically becomes effective in the event any party fails or is unable to take and market its share of the gas as produced for any reason. The Gas Balancing Agreement provides in relevant part:

3.

... All gas (including overproduction or make-up) taken and marketed by a party in accordance with the terms of this Agreement, regardless of whether such party is underproduced or overproduced, shall be regarded as gas taken for its own account with title thereto being in such party.

6.

Any party who is underproduced as to a given category of gas shall endeavor to bring its taking of gas of that category into balance. After delivering written notice to the Operator, any party may begin taking and delivering to its purchaser(s) its full share of each category of gas produced. To allow for the recovery and makeup of underproduced gas in a category and to balance the gas account for the interests, the underproduced party or parties for a category of gas shall after written notice to the Operator, also be entitled to take up to an additional fifty percent (50%) of the monthly quantity of that category of gas attributable to each overproduced party ...

7.

If at the termination of gas production of a given category of gas, an imbalance exists between the parties, a monetary settlement of the imbalance between the parties shall be made within a reasonable length of time after such gas production permanently ceases. The amount of the monetary settlement will be limited to the proceeds actually received by each overproduced party at the time of overproduction, less

royalties and taxes paid on such overproduction ...

(Debtor's Exhibit 3, at Exhibit "E", p. 1–3).

Debtor seeks authority to sell its interest in the gas produced by the Stanton Well free and clear of liens. Debtor contends that the Joint Operating Agreement, including the Gas Balancing Agreement, is an executory contract, which was rejected pursuant to the provision in the confirmed plan rejecting all executory contracts not previously assumed.

WBOC contends that Debtor's duties under the Gas Balancing Agreement constitute a covenant running with the land. WBOC asserts that its underproduced share of gas is its property, and thus may not be conveyed by Debtor.

The parties stipulate that Debtor had overproduced and that WBOC had underproduced under the Gas Balancing Agreement as of the petition date. Greg Olson, the Debtor's president, testified that he estimates the imbalance in production to be approximately $70,000.00 and the total value of the gas to be approximately $135,000.00. The court finds Olson's uncontroverted testimony credible.

*Conclusions of Law*

The sale of property of the Debtor's estate free and clear of liens is governed by Section 363(f). That section provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The language of the Gas Balancing Agreement is determinative of the relative rights of the parties. Under Section 3 of the Gas Balancing Agreement, title to gas taken and marketed by a party rests in the party taking and marketing the gas. Under Section 7 of the Agreement, an underproduced party may be compelled to accept a money satisfaction of its interest.

WBOC's assertion that the estate has no interest in the property as a result of its overproduction is without merit. WBOC's interest pursuant to the Gas Balancing Agreement is best characterized as a lien.

Under Arkansas law, an oil and gas lease conveys to the lessee an interest in the land. *Arkansas Louisiana Gas Co. v. Evans*, 232 Ark. 495, 338 S.W.2d 666 (1960); *Clark v. Dennis*, 172 Ark. 1096, 291 S.W. 807 (1927). The interest at issue before the court is not the oil and gas lease, but rather a Gas Balancing Agreement entered into by the parties pursuant to their Joint Operating Agreement.

The Stipulation of Interest and Conveyance (Weiser–Brown Exhibit B) does not affect the rights of the parties as it pertains to the Gas Balancing Agreement, because, by its own terms, it is subject to the Leases, Joint Operating Agreement, and Gas Balancing Agreement.

The court concludes that the Debtor may sell its interest in the Stanton Well in Pope County, Arkansas free and clear of the lien of Weiser–Brown Oil Company, with such lien to attach to the proceeds of sale.

Based on the foregoing, the court will enter a separate conforming Judgment.