486 A.2d 424

**In re ESTATE OF Pearl M. CORNELL, Deceased.**

**Appeal of FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BUCKS COUNTY, Appellant.**

Superior Court of Pennsylvania.

Argued June 26, 1984.

Filed Dec. 12, 1984.

Reargument Denied Jan. 28, 1985.

596

James A. Downey, III, Bristol, for appellant.

Paul R. Beckert, Jr., Fairless Hills, for appellee.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

CERCONE, Judge:

First Federal Savings and Loan Association of Bucks County (First Federal) filed an original action in assumpsit [1] and trespass in the Civil Division of the Court of Common Pleas against Jessie Roger Erwin, executor of the estate of Pearl M. Cornell. Preliminary objections to the assumpsit count of the complaint were sustained and, by agreement of the parties, the matter was transferred to the Orphans' Court Division. There an account was filed on behalf of the estate of Pearl M. Cornell. At the audit, First Federal filed a claim in the amount of $10,528.40, which it claimed was

---

1. Although appellant's complaint is styled as "Assumpsit-Trespass," both parties in their briefs and the court in its opinion make reference to the "unjust enrichment" claim. Acknowledging that "scarcely any procedural defect is viewed with greater tolerance by modern courts than errors in the form of the action," *Gedekoh v. Peoples Natural Gas Co.*, 183 Pa.Superior Ct. 511, 515, 133 A.2d 283, 285 we will consider the first count of the complaint to include a claim of unjust enrichment. *See also DelConte v. Stefonick*, 268 Pa.Superior Ct. 572, 408 A.2d 1151 (1979) (A plaintiff is not obliged to state the legal theory or theories underlying his complaint, but need only allege material facts on which a cause of action is based.) Pa.R.C.P. 1019(a).

paid in error to the executor on behalf of the estate. After a hearing, the court entered an adjudication concluding that First Federal had not met its burden of establishing that the property in question was not that of the decedent. We disagree with this conclusion of the Orphans' Court, and because we feel it was error to dismiss the assumpsit claims, we reverse and remand for a hearing on appellant's claim for restitution. We affirm the court's adjudication that a conversion was not substantiated.

The findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. *Brenna v. Nationwide Insurance Co.,* 294 Pa.Superior Ct. 564, 440 A.2d 609 (1982). "Abuse of discretion" is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of prejudice, partiality, bias, or ill-will, as shown by the evidence or the record, discretion is abused. *Straub v. Tyahla,* 274 Pa.Superior Ct. 411, 418 A.2d 472 (1980).

By electing to attempt to settle the instant matter in the Orphans' Court rather than in the Civil Division, the parties also elected a heavier burden of proof. Fashioned as a claim against a decedent's estate, First Federal undertook a burden of clear and convincing evidence, *Secary Estate,* 407 Pa. 162, 180 A.2d 572 (1962), to prove that the estate was wrongfully, albeit inadvertently, paid $10,528.43.

In reviewing a claim regarding sufficiency of evidence, the appellate court must view the evidence in the light most favorable to the verdict winner. *Rubinstein v. J.E. Kunkle Co.,* 244 Pa.Superior Ct. 474, 368 A.2d 819 (1976). The evidence presented at the hearing below established that the decedent, an elderly woman, opened an account at First Federal on June 29, 1978, in the amount of $10,000. She was issued a certificate bearing the number 3–9–3, with the last digit, 3, representing the actual account number. The saving certificate was numbered 1893. Mr.

Louis Persichetti, the bank manager, testified that a few months after she opened her account, it came to his attention that another depositor, upon opening her own $10,000 account, had mistakenly received the same account number as the decedent, i.e., number 3.[2]  He testified that he telephoned Ms. Cornell and notified her that she would be receiving a replacement certificate in the mail and that she should destroy the original.  Ms. Cornell then died on February 21, 1979.

Subsequently, on March 19, 1979 in his capacity as executor of the estate, Mr. Erwin, the decedent's grandson, presented the certificate numbered 1893, and 3–9–3, to the bank for payment into the estate.  He was given a check for $10,528.40.  The executor testified that, in going through the decedent's papers, he found only one certificate and this was the one he presented on March 19, 1979. Thereafter, he continued to receive monthly interest payments from the bank in his grandmother's name which caused him to wonder whether there could be another certificate.  He then went to the bank on June 4, 1979, and closed what the bank determined to be another account in the decedent's name.  This payment amounted to $10,-658.00.  It was not until February 1980, when Mrs. Ribaric discovered through an interest statement issued for tax purposes that her account had been erroneously emptied, that the bank then discovered its own mistake.  It rehabilitated Mrs. Ribaric's account in the amount for which it brought the instant action, $10,528.34.  What had actually transpired was that the first certificate which was cashed by the executor in March 1979 was Mrs. Ribaric's; that which was cashed in June 1979 was in reality the decedent's account.

The bank was able to present a certificate numbered 1914, account number 3–56–2, labeled "replacement certifi-

2.  This depositor's name was Ribaric.  Exhibits entered at the hearing revealed that an account was opened in that name on July 25, 1978, less than a month after Pearl Cornell, decedent, opened her account. It was assigned the number 3–26–3, with the last digit being 3, the same as decedent's account.

cate for No. 1893," which number 1893 was presented by the executor in March 1979. This new certificate bore a changed account number 2. However, and this fact was emphasized by the trial court, the bank had no record that Ms. Cornell's first certificate had been cancelled nor was it able to present any evidence that Ms. Cornell was notified about the problem. The bank manager explained only that because of her advanced years and inability to get around, that he waived the bank's usual policy of asking the customer to turn in his or her duplicate certificate before issuing a replacement, and merely talked with her on the phone. The bank manager also presented testimony that he was certain that Ms. Cornell had opened only one account because only one check for $10,000 was received on June 29, 1978, the day she came in to open her account, and even if she presented cash, the deposit slip for that same day would reflect a $10,000 imbalance, which it did not.

Our consideration of this evidence and the inferences to be drawn therefrom persuades us that the trial court erred in concluding that the bank failed to meet its burden. Contrary to appellee's contention this determination was a legal, not a factual one, and subject to our review. *Minteer v. Wolfe*, 300 Pa.Superior Ct. 234, 446 A.2d 316 (1982). While it is true that the exhibits which were introduced only obfuscate what happened, it cannot be gainsaid that they are only additional proof of what is clear from Mr. Persichetti's testimony, that the bank made a costly mistake. Our consideration of all of the evidence, both oral testimony and exhibits, leads us to reverse the trial court's finding and remand the case for further proceedings.

■ Now it must be determined what the further proceedings should be. The evidence was uncontroverted that the executor did not obtain the erroneous account through any deceit. It is true that both he and the bank believed the proceeds of the account closed in March 1979 were the estate's. Because of this, we agree with the trial court that a case of conversion has not been substantiated below.

A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other

interference therewith, without the owner's consent and without lawful justification.

*Baker v. Rangos,* 229 Pa.Superior Ct. 333, 348, 324 A.2d 498, 505 (1974).

Despite the bank's claim that it notified appellee about the mistake prior to his distribution of the erroneously paid proceeds and that, therefore, a conversion has been made out, it is clear that at the time appellee came into possession of the money, it was with the bank's blessing, albeit mistaken.

However, what the facts elicited at the hearing do present is the basis for an action in *quasi-contract,* or unjust enrichment for restitution.[3]

Where one person has been unjustly enriched at the expense of another he or she must make restitution to the other. *DeGasperi v. Valicenti,* 198 Pa.Super 455, 457, 181 A.2d 862, 864 (1962). However, unjust enrichment is the key to an action for restitution. *Myers-Macomber Engineers v. M.L.W. Construction Corp., et al.,* 271 Pa.Super. 484, 414 A.2d 357, 360 (1979). The vehicle for achieving restitution is a *quasi-contract,* or contract implied in law. "Unlike true contracts, *quasi-contracts* are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 290, 259 A.2d 443, 449 (1969), quoting Restatement (Second) of Contracts, § 5, comment b. at 24. "*Quasi-contracts* may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention." *Schott v. Westinghouse Electric Corpora-*

---

3. This count of complaint was dismissed pursuant to preliminary objections. The opinion of the court does not set forth the reasons for this dismissal, perhaps because another judge took this action before she entered the case. And no immediate appeal was taken from this dismissal since appellants were still able to pursue their trespass count. Thus, this issue is properly raised before us now.

*tion, supra,* 436 Pa. at 290–91, 259 A.2d at 449. To sustain a claim of unjust enrichment, it must be shown by the facts pleaded that a person wrongly secured or passively received a benefit that it would be unconscionable to retain. *Brereton Estate,* 388 Pa. 206, 212, 130 A.2d 453, 457 (1957); *Crossgates Realty, Inc. v. Moore,* 279 Pa.Super. 247, 420 A.2d 1125, 1127–8 (1980); *Roman Mosaic & Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 218, 313 A.2d 305, 307 (1973).

> *Martin v. Little, Brown and Co.,* 304 Pa.Superior Ct. 424, 430–1, 450 A.2d 984, 988 (1981).

It is uncontroverted that there was no contract between the parties herein. And it may be possible for the bank to show that, for reasons of justice, an obligation must be created by law between them. The evidence does tend to show that the estate passively retained a benefit that it may be unconscionable to retain. Therefore, this court is of the opinion that appellant should be afforded an opportunity to substantiate its claim under a theory of unjust enrichment.

Therefore, the order of the court is affirmed as to the trespass count, but reversed and case is remanded for a hearing on appellant's claim of unjust enrichment. Jurisdiction is relinquished.