492 A.2d 401

**ESTATE OF Norman H. GILBERT, Deceased.**

**Appeal of Anna M. REKATZKY.**

Superior Court of Pennsylvania.

Argued Nov. 28, 1984.

Filed April 26, 1985.

84

Jeremy Ross, Philadelphia, for appellant.

Before WIEAND, MONTEMURO and CERCONE, JJ.

WIEAND, Judge:

Norman H. Gilbert, a resident of Philadelphia, died testate on June 5, 1976 at the age of 88. His will, dated April 25, 1973, named as residuary legatees his three daughters, Alberta C. Bacon, Helen Muriel Smith, and Anna M. Rekatzky. A codicil, executed in 1974, named his son-in-law, William L. Rekatzky, as executor. Upon the testator's death, his estate was insolvent; in the latter days of his life he had transferred virtually all his property to Anna Rekatzky, or into her name and his jointly with right of survivorship. The executor died on November 8, 1976, and letters of administration d.b.n.c.t.a. were issued to A. Groh Schneider, Esquire. He obtained a citation directed to Anna Rekatzky to show cause why she should not return to the estate of her deceased father those assets which she had acquired as a result of transfers between 1974 and 1976. After evidentiary hearings, the orphans' court ordered Anna Rekatzky to return assets to the estate in the amount of $40,931.82.[1] Exceptions were dismissed, and this appeal followed.

1. As itemized by the orphans' court, this amount included the following:

■■■ It is argued (1) that the orphans' court lacked jurisdiction to compel a retransfer of assets by appellant to the estate of the decedent; and (2) that the evidence was insufficient to show that the transfers by the decedent had been induced by undue influence. We find no merit in these contentions and, therefore, affirm.

The Judicial Code provides as follows:

The divisions of a court of common pleas are administrative units composed of those judges of the court responsible for the transaction of specified classes of the business of the court. In a court of common pleas having two or more divisions each division of the court is vested with the full discretion of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.

42 Pa.C.S. § 952. It has been held, therefore, that "[t]he issue of which division [is] proper to hear [an] action is not a question of jurisdiction or of venue." *Baskin & Sears v. Edward J. Boyle Co.*, 506 Pa. 62, 66, 483 A.2d 1365, 1367 (1984). "[E]ach division of a court of common pleas is vested with the full jurisdiction of the whole court." *Guerin v. Guerin*, 296 Pa.Super. 400, 404 n. 3, 442 A.2d 1112, 1113 n. 3 (1982). The remedy for bringing a proceeding in the wrong division of a court is not dismissal but transfer to the correct division. *Commonwealth v. Wadzinski*, 485 Pa. 247, 254–255, 401 A.2d 1129, 1132 (1978); *Balter v. Balter*, 284 Pa.Super. 350, 357 n. 7, 425 A.2d 1138, 1142 n. 7 (1981). In the instant case, although appellant asked that the proceeding be dismissed, she made no request that it be transferred to another division.

■■■ The Probate, Estates and Fiduciaries Code provides, at 20 Pa.C.S. § 711, as follows:

| | |
|---|---|
| (a) Provident National Bank Account, which had been transferred into a joint account | $ 5,399.82 |
| (b) Philadelphia National Bank Account | 2,431.11 |
| (c) Girard Bank Account | 4,815.48 |
| (d) Proceeds derived from sale of real estate | 28,285.41 |
| | $40,931.82 |

> Except as provided in section 712 of this code (relating to non-mandatory exercise of jurisdiction through orphans' court division) . . ., the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> . . . .
>
> **(17) Title to personal property.** The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death.
>
> . . . .

This section mandates that the orphans' court division exercise jurisdiction to adjudicate ownership of personalty registered in the name of the decedent at the time of his death, whether in his name alone or in the name of the decedent and another person. *Thomas Estate*, 457 Pa. 546, 550–551, 327 A.2d 31, 33–34 (1974). It seems clear, therefore, that the ownership of bank accounts in the joint names of the decedent and another at the time of the decedent's death was properly determined by the orphans' court division.

Section 712 of the Code provides that "[t]he jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division: . . . The disposition of any case where there are substantial questions concerning matters enumerated in section 711 (relating to mandatory exercise of jurisdiction through orphans' court division in general) *and also matters not enumerated in that section.*" 20 Pa.C.S. § 712(3) (emphasis added).

■■■ This section, which grants non-mandatory jurisdiction to the orphans' court division to exercise jurisdiction of the court in "other matters," is "intended to avoid multiple actions in different divisions in a case involving two or more questions, one of which would ordinarily be decided by the orphans' court division and the other by the trial or family division." *Baskin & Sears v. Edward J. Boyle Co., supra,*

506 Pa. at 67, 483 A.2d at 1367 (quoting the commentary to 20 Pa.C.S. § 712). Since the orphans' court division had jurisdiction to determine the ownership of jointly owned accounts and this required an examination of the relationship between appellant and decedent and a determination of whether there was a confidential relationship and/or the exercise of undue influence, the orphans' court division could also exercise jurisdiction to determine whether undue influence had tainted the transfer of assets into the name of appellant alone. Similarly, the orphans' court could inquire into the circumstances surrounding the execution and delivery of a deed transferring real estate into joint names with right of survivorship. The orphans' court's jurisdiction was not defeated by appellant's sale of the real estate prior to the citation by which the present proceedings were commenced.

■ The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. *In re Estate of Cornell*, 336 Pa.Super. 594, 597, 486 A.2d 424, 425 (1984).

This rule is particularly applicable "to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony." *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. *In re: Estate of Damario*, 488 Pa. 434, 412 A.2d 842 (1980). However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts. *In re: Ischy Trust*, 490 Pa. 71, 415 A.2d 37 (1980).

*In re Estate of Dembiec,* 321 Pa.Super. 515, 519–520, 468 A.2d 1107, 1110 (1983).

The orphans' court in this case found that appellant had occupied a confidential relationship with her father, beginning in March of 1974 and continuing until the date of his death. The court also found that her father had suffered from a weakened intellect during the same period. This caused the burden of proof to shift to appellant to show the absence of undue influence. See: *Kees v. Green,* 365 Pa. 368, 75 A.2d 602 (1950). The orphans' court found that appellant had failed to meet this burden. She was unable to show that the alleged gifts made to her by the decedent were the products of a free will. The decedent's weakened intellect coupled with appellant's influence borne of her position of confidence, the court concluded, had destroyed decedent's capacity to dispose freely and independently of his assets. The court's findings are supported by the record. There is no basis for concluding that the court capriciously disbelieved any competent or credible evidence or systematically discounted evidence favorable to appellants because of prejudice or bias. Similarly, we are unable to perceive any error of law.

Although a parent-child relationship does not conclusively suggest a confidential relationship, it is a fact to be considered. *Estate of Keiper,* 308 Pa.Super. 82, 87, 454 A.2d 31, 34 (1982). Moreover, "[t]ransactions by which a decedent shortly before his death practically strips himself of all his available property are naturally guarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye." *Id.,* 308 Pa.Superior Ct. at 88, 454 A.2d at 34, quoting *Estate of Wise,* 182 Pa. 168, 171, 37 A. 936, 936 (1897). In *Estate of Keiper, supra,* a case similar to the present one, the decedent had recently lost his wife. His son-in-law, to whom the decedent had given a power of attorney, transferred most of the decedent's money, totalling almost $40,000.00, into a joint account in the name of the decedent and a daughter, who was the wife of the son-in-law, with right of survivorship. With these transac-

tions the decedent's son-in-law, upon whom the decedent had leaned heavily when making decisions and administering his business affairs, had stripped his father-in-law of assets and had thereby effectively revoked the decedent's will, which contained an expression of intent to benefit his three children equally. These actions, held the Court, "must be regarded with such suspicion as to shift the burden of proof to the recipient of the purported gift." *Id.*, 308 Pa.Super. at 88, 454 A.2d at 34. Although in the case *sub judice* appellant was granted her father's power of attorney only after much of his property had already been put into her name, and the decedent had acted personally to transfer funds to joint accounts and his home to joint title, we agree with the orphans' court that there was a confidential relationship between appellant and the decedent which shifted the burden to appellant to prove that the transfers had been the product of the decedent's free will. The record supports the orphans' court's conclusion that appellant failed to meet this burden. She failed to show that the transfers by the decedent were the products of a free will and not a will overcome by improper influence. The order of the orphans' court, therefore, will be affirmed.

Judgment affirmed.