690 A.2d 256

**In re Paul G. LANG, Sr., an Incapacitated Person.**

**In re Kathryn M. LANG, an Incapacitated Person.**

**Appeal of Robert M. LANG, Co–Guardian of the Persons of Paul G. Lang, Sr. and Kathryn M. Lang.**

**COMMONWEALTH of Pennsylvania ex rel. Robert M. LANG, Appellant,**

**v.**

**Lawrence V. ROTH, Warden of the Montgomery County Correctional Facility.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1996.

Filed Jan. 31, 1997.

Reargument Denied April 4, 1997.

Samuel C. Stretton, West Chester, for appellant.

Virginia McMichael, Philadelphia, for Kathryn Lang, appellee.

Before CAVANAUGH and BECK, JJ., and CERCONE, President Judge Emeritus.

BECK, Judge:

The issue is whether the orphans' court has subject matter jurisdiction over property transferred out of an incapacitated person's estate prior to the adjudication of incapacity. We find that the orphans' court had subject matter jurisdiction and affirm the trial court.

This case presents the consolidated appeals of Robert Lang ("Robert") who was held in contempt after he refused to comply with a Montgomery County Orphans' Court order requiring him to deliver certain funds to appellee CoreStates Bank, the guardian of Robert's incapacitated parents' estate. CoreStates Bank asserts that the funds belong to Robert's parents, Kathryn and Paul Lang, Sr. Robert claims the funds are his own.

In May of 1995, Paul Lang, Jr. petitioned the orphans' court division of the Montgomery County Court of Common Pleas Court for an order adjudicating his parents incapacitated. Such an order was entered three months later and the court named Paul Jr.'s brothers, Robert and James Lang, as co-guardians of the persons of their parents. CoreStates Bank ("CoreStates") was named guardian of the parents' estate. Pursuant to a court order, in December 1995, Robert filed a "First and Partial Account of Gifts Received." In it, he revealed eight transfers of money from his parents to himself which occurred over a two month period just prior to the filing of Paul Jr.'s incapacitation petition. The transfers amounted to $209,732.52.

At a hearing regarding the transfers, Robert testified that the money, in the form of cash, was being held safely "under water" in Avalon, New Jersey.[1] The court questioned Robert's attorney about his position with respect to allegations, and medical records in support thereof, that the Langs had been incapacitated for a number of years prior to the date of the transfers. Robert's attorney initially requested a recess

---

1. Robert, a diver, testified that he had hidden the money off a pier in Avalon.

to discuss the issue with his client. Thereafter, he made the following representation to the court:

*I'd like to make a statement on behalf of my client Robert Lang.* The transactions that were listed which total two hundred and nine thousand seven hundred thirty two dollars and fifty-two cents were taken by Robert Lang for the express purpose of protecting his parents. *They were not in the nature of gifts.* They were taken by him to protect his parents from what he perceived to be a threat as to the funds disappearing. So that in his holding these funds, *he's holding them for his parents' benefit* or for the benefit as each account was originally titled.

N.T. December 19, 1995 p. 277 (emphasis supplied).[2]

In light of the representation, the court suggested Robert voluntarily turn the funds over to the newly named guardian of the estate. Robert promptly agreed and personally stated on the record that he would retrieve the funds within one week and give Robert fired his attorney and refused to give the money to CoreStates. The court then entered an order requiring Robert to produce the funds to CoreStates by January 8, 1996 "without prejudice to the right of any party to claim an interest in these funds." The funds were not turned over and instead, Robert, represented by new counsel, filed a motion seeking to withdraw the statement made by his previous attorney on December 19, 1995.[3]

On March 5, 1996 a hearing was held to determine whether Robert should be held in contempt for failing to turn the funds over to CoreStates. At the hearing, Robert made many contradictory statements regarding the amount and location of the funds. He also testified that after the court ordered him to turn over the funds to CoreStates, he began using the money.[4] Robert claimed he never knew how much money he

---

2. Although the certified record does not include a copy of the transcript of the December 19, 1995 hearing, both Robert Lang and CoreStates concede that this statement was made by Robert Lang's attorney. In addition, the trial court included the representation, verbatim, in its opinion.

3. The motion was denied.

4. Robert said he spent the money and gave some of it away.

originally had because he had not counted it, but he believed it was in excess of $100,000.00. He testified that by the time of the hearing, that amount had dwindled to between $5,000.00 and $10,000.00.

After the hearing, the court found Robert in contempt of court for failing to obey its prior order. It also specifically found incredible Robert's testimony regarding the disposal of most of the money. As a sanction, Robert was committed to the Montgomery County Correctional Facility until he produced the funds. He timely filed an appeal of the contempt order.

Once incarcerated, Robert also filed a Petition for Writ of Habeas Corpus, which was summarily denied by the court. An appeal was then filed in this court. Because both the contempt appeal and the habeas corpus appeal raise the same single issue, we granted CoreStates's motion to consolidate the appeals and now decide both in this opinion.

In both of his briefs to this court, Robert claims that his contempt conviction was improper because the Orphans' Court had no subject matter jurisdiction over the funds. Robert's argument is as follows: The orphans' court has subject matter jurisdiction over incapacitated persons' estates; therefore, the court has jurisdiction over only those items belonging to his parents as of the date the incapacitation order was entered. He reasons that because the funds at issue were transferred to Robert prior to the order of incapacity and prior to the existence of the estate, the court has no subject matter jurisdiction over them and cannot issue an order directing their production.[5] Were the court permitted to do so, argues Robert, the order of incapacitation would have retrospective effect.

To support his claim, Robert has not offered any relevant case law with the exception of trial court opinions. Instead,

---

5. Robert's Statement of Question Involved is as follows:

Did the lower court commit error of law [sic] in exercising subject matter jurisdiction of the $209,732.52 because these funds were in the possession, custody and control of Robert M. Lang prior to the adjudications of incapacity?

he draws our attention to the statute which sets forth the jurisdiction of the orphans' court. It provides, in pertinent part:

Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) . . . the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division: . . .

Incapacitated persons' estates.-The administration and distribution of the real and personal property of the estates of incapacitated persons. . . .

20 Pa.C.S.A. § 711(10).

Robert frames the issue as a temporal one. The funds cannot be part of his parents' estate, he argues, because they were already in his possession and control on the date of the incapacity order. The trial judge responded to this argument by stating that "when Robert and his previous attorney made a statement to the effect that the funds were the property of his incapacitated parents, and Robert agreed to produce them to the guardian of his parents' estates, this court's jurisdiction over the funds was established." Trial Court Opinion dated April 29, 1996 at 2–3.

In its appellate brief, CoreStates argues that even if § 711(10) alone does not give the orphans' court jurisdiction over the funds, § 712 provides the necessary subject matter jurisdiction. Section 712, which is specifically referenced in § 711, provides in pertinent part:

The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:

\* \* \* \* \* \*

The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.

20 Pa.C.S.A. § 712(3).

CoreStates insists that when read together, sections 711(10) and 712(3) establish the orphans' court jurisdiction.

■ While the orders on appeal address the validity of a contempt conviction and denial of habeas corpus relief, our task here is to decide the purely legal issue of subject matter jurisdiction in the orphans' court. Unfortunately, neither party has offered, and our own research has not uncovered, any case law directly on point. There are, however, some published cases which, by analogy, aid our analysis.

In *Estate of Gilbert,* 342 Pa.Super. 82, 492 A.2d 401 (1985), a father's will provided that his estate was to be divided among his three daughters. At the time of his death, his estate was insolvent because in the latter days of his life he had transferred virtually all of his property to just one of his daughters. After evidentiary hearings, the orphans' court ordered the daughter who had received the property to retransfer the assets to her father's estate. On appeal, the daughter argued that the orphans' court lacked jurisdiction to compel retransfer of the assets.

Just as CoreStates urges us to. do here, the *Gilbert* court relied on § 712(3) in finding that the orphans' court had jurisdiction. Commenting on the purpose of § 712, the court stated:

> This section, which grants nonmandatory jurisdiction to the orphans' court division to exercise jurisdiction of the court in "other matters" is "intended to avoid multiple actions in different divisions in a case involving two or more questions, one of which would ordinarily be decided by the orphans' court division and the other by the trial or family division."

*Id.* at 86, 492 A.2d at 403 (citations omitted).

In *Estate of Reinert,* 367 Pa.Super. 147, 532 A.2d 832 (1987), *appeal denied,* 518 Pa. 623, 626, 541 A.2d 1135, 1138 (1988), the decedent's estate filed an action in orphans' court to recover assets from William Bradfield. Based on Bradfield's convictions for the murder of the decedent and her children, as well as theft and related charges, the orphans' court entered summary judgment in favor of the estate and ordered that the assets, $25,000.00, be returned to the estate. Brad-

field appealed, arguing that the orphans' court had no jurisdiction to order appellant to return the money.

Again, this court relied on § 712(3) in finding the orphans' court's jurisdiction proper. Characterizing the case as one in which there existed substantial questions concerning a matter enumerated in § 711, i.e., a decedent's estate, the *Reinert* court noted that "[o]nce it is determined by Section 711 and 712 that the orphans' court has jurisdiction to hear a case, then it has the same authority as the whole court." *Id.* at 151, 532 A.2d at 834.

We recognize that both *Gilbert* and *Reinert* concern decedents' estates and not those of incapacitated persons. However, the discussion of § 712(3) in both opinions is directly relevant to this case. It is clear from the plain language of the statutes that § 712(3) applies to all subsections of § 711, including § 711(10), jurisdiction over incapacitated persons' estates.

We conclude that the orphans' court had jurisdiction to compel Robert to turn over to CoreStates the funds at issue. The ownership of those funds is a substantial question concerning the Langs' estates. The fact that at one point in the proceedings, Robert's attorney represented to the court on behalf of his client that the funds belonged to the estate, makes the existence of a substantial question all the more obvious. Robert's subsequent attempts to deny the validity of that statement does not remove the substantial question nor does it defeat the orphans' court's jurisdiction. Even in the absence of Robert's lawyer's statement, the orphans' court would have subject matter jurisdiction.

■ Our holding is not only based on analogous precedent but also on sound public policy. Just prior to the incapacity adjudication, the funds in dispute were clearly part of the incapacitated parties' estate. As such the orphans' court had authority to determine whether the funds belonged to the estate or were legally transferred from it. To require a separate hearing in a separate division of the court to adjudicate this question would erode judicial economy and efficiency.

222

Furthermore, it would negate the orphans' court's continuing obligation to protect and oversee the estate of an incapacitated person. If we consigned the question of ownership of the funds to a separate action, we would undermine the orphans' court's protective and oversight function. Also, a separate action would delay the final resolution of the matter exposing the funds to the possibility of dissipation and the estate to needless transactional costs.

Appellant's argument that the orphans' court did not have subject matter jurisdiction is based on an erroneous and distorted interpretation of the law. On law and policy grounds, we reject it.

Order of contempt affirmed; order denying writ of habeas corpus affirmed. Jurisdiction relinquished.