J-A29021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 670 WDA 2023 |

Appeal from the Order Entered May 25, 2023
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
Docket No. 377-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: March 14, 2024**

Appellant S.L. (Mother) appeals from the interim order issued by the Erie County Court of Common Pleas – Orphans' Court Division, which directed Appellee K.D. (Paternal Aunt) to pursue custody of 10-year-old S.D. (the Child) in the Erie Court's Family Division.  The interim order provided Paternal Aunt with "standing" to file a custody complaint.  Until the transfer between divisions was completed, the order preserved the *status quo*, whereby Paternal Aunt would continue to be the Child's "temporary guardian" and the parties would temporarily share physical custody.  After review, we quash the appeal as interlocutory.

The relevant factual and procedural history is as follows.  In December 2022, Paternal Aunt filed a "petition for appointment of emergency guardian and for plenary guardian of the person and estate of a minor child."  In her petition, Paternal Aunt alleged: that the Child's Father died on November 12,

2022; that the Child had "little to no contact" with Mother for the preceding 8 years and did not have "an iota of a relationship" with Mother; and that the Child was bonded with Paternal Aunt and her family. Paternal Aunt further alleged that she stood "primarily *in loco parentis*" since Father's death and there were no less restrictive alternatives other than the appointment of an emergency guardian and plenary guardian of the Child's person and estate.

While presiding over motions court, the orphans' court put the presentation of Paternal Aunt's emergency petition on the record and held a "motions court hearing." ***See generally*** N.T., 12/7/22, at 1-27. Paternal Aunt was present with counsel, and Mother represented herself. Counsel for Paternal Aunt said his client sought a guardianship to "provide this child with consistency in her schooling, her medical care…" ***See*** N.T., 12/7/22 at 3. Paternal Aunt testified that she and her sisters (other paternal aunts) had helped Father raise the Child, and that Mother had not been involved. Mother disputed the allegation and said she was in the Child's life every day. Notwithstanding the domestic relations nature of the action, the presiding motions court judge (Hon. Joseph M. Walsh, III), issued an interim order appointing Paternal Aunt as a "temporary guardian of the person" until a final hearing could be held before a separate judge (Hon. Elizabeth K. Kelly) on January 26, 2023. ***See*** Order of Court, 12/13/22. The parties understood the December 2022 order to mean that Mother had no form of physical or legal custody.

Both parties appeared with counsel for the January 2023 date, but they wanted to continue the matter. In the interim, they agreed to leave in place the temporary guardianship, but they were unable to agree to a physical custody schedule. The orphans' court issued another temporary order, dated February 9, 2023, which kept the temporary guardianship and granted Mother partial custody for a few hours after school on Tuesdays and Thursdays, and from 12:00 pm to 6:00 pm on weekends. The court further directed the parties to begin reunification therapy with the Child. Lastly, the court rescheduled the final guardianship hearing for May 25, 2023.

At the May 2023 hearing, the parties appeared with new counsel. The hearing began with respective proffers of testimony. During the proffer, counsel for Paternal Aunt anticipated that Mother would challenge her standing to bring a custody action. Paternal Aunt's position was that she stood *in loco parentis* and that Mother waived her ability to challenge standing. Following Mother's responding proffer, the orphans' court recognized that Paternal Aunt had essentially brought a custody action. The court indicated that the ligation would have to be set on a new path, but it would order relief in the interim:

> The orphans' court: So, what I am going to do is I'm going to move towards an equal shared custody between [Paternal Aunt] and [Mother]. I am going to appoint a guardian *ad litem* for this Child to represent her interests. And we are going to refer this to custody [court]. And I am going to make a finding at this point in time that [Paternal Aunt] does have standing.

- 3 -

> [Paternal Aunt's counsel], your client is going to file a custody action at this point in time. We are going to morph this into a custody proceeding. Once the custody proceeding is underway, we are going to terminate the guardianship. [A]nd pending the outcome of that custody proceeding – particularly because we are facing the summer months – I'm going to enter an order that is going to establish an equal shared custody arrangement between [Paternal Aunt and Mother].

N.T., 5/25/23, at 19-20.

On the same day, the orphans' court issued an order directing the parties to litigate the matter in the Family Division of the Erie County Court of Common Pleas. **See** Order of Court, 5/25/23, at ¶1. The order further provided: "As set forth at the continued guardianship hearing, Temporary Guardian [(Paternal Aunt)] has standing to [pursue] custody." **Id.** The orphans' court also appointed a guardian *ad litem* (GAL) to represent the Child in future custody proceedings. **Id.** at ¶2. Finally, the order awarded the parties shared physical custody, pending further order. **Id.** at ¶4. However, the court left in place the temporary guardianship. **Id.** at ¶¶3, 5.

On June 9, 2023, Mother filed a notice of appeal. Initially, she included nine errors in her concise statement of matters complained of on appeal. Some of those alleged errors pertained to the decision by Judge Walsh, while others concerned the orders issued by Judge Kelly. Both trial judges issued Pa.R.A.P. 1925(a) opinions. In her Brief, Mother reduced the alleged errors to the following three issues, which we reorder for ease of disposition:

- 4 -

1. Did the orphans' court abuse its discretion by finding Paternal Aunt has standing?

2. Did the orphans' court abuse its discretion by granting Paternal Aunt a temporary emergency guardianship order?

3. Did the orphans' court abuse its discretion by awarding Paternal Aunt any physical custody?

Mother's Brief at 3 (cleaned up).

Before we address Mother's claims, we clarify from the outset that no one contests the orphans' court's decision to terminate guardianship proceedings and transfer the matter to the Family Division of the Erie County Court of Common Pleas. **See** Mother's Answer and New Matter, 5/23/23, at ¶10; **see also** Mother's Brief at 4.

It is unclear why Paternal Aunt sought a guardianship in the first place. Paternal Aunt initially came to court seeking physical custody as well as the authority to make medical and educational decisions on the Child's behalf – *i.e.*, legal custody. **See** N.T., 12/7/22 at 3; **see also** 23 Pa.C.S.A. § 5322 (defining "legal custody"). To be sure, Paternal Aunt's petition for guardianship included guardianship of the Child's **estate**, as well as the Child's person, but it seems as though the estate piece was an afterthought. During the December 2022 motions hearing, Paternal Aunt raised issues only insofar as they pertained to the Child's physical safety and welfare. In fact, the resulting temporary guardianship order was just for the Child's person and was silent to the estate. We note further that Paternal Aunt did not allege that Father made her a testamentary guardian under 20 Pa.C.S.A. § 2519(b)

("Guardian of the estate").[1]  Relatedly, it does not appear as though Father designated Paternal Aunt to be a "coguardian" under the Standby Guardianship Act, 23 Pa.C.S.A. §§ 5601-5625.

We observe that the orphans' court judge, who granted the temporary guardianship out of motions court, referenced the local Erie Orphans' Court Rule 5.6, which sets forth the procedure for seeking an "emergency guardianship for the estate or person of a minor."  *See* Trial Court Opinion by Judge Walsh (T.C.O. 2), 7/7/23, at 1, n.1 (citing Erie O.C.R. 5.6).[2]  From what we discern, Paternal Aunt petitioned for emergency guardianship under 20 Pa.C.S.A. § 5513 ("Emergency guardian").  This was improper.  Chapter 55 of the Probate, Estates and Fiduciaries Code pertains to the "incapacitated person," which is defined as "an *adult* whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S.A. § 5501 ("Meaning of incapacitated person") (emphasis added); *see also* § 5502 ("Purpose of chapter"); *and see* Pa.R.C.P. 2051 (definitions).  Not only did Paternal Aunt fail to allege incapacity, but the proposed guardianship was for a minor.

---

[1] Under 20 Pa.C.S.A. § 2519(a), only a sole surviving parent may appoint a testamentary guardian of the person.

[2] The court also stated that it did "not necessarily disagree" that the case should be transferred to the family division. *See* T.C.O. 2, at 3-4.

Ultimately, the orphans' court ruled that Paternal Aunt should have sought relief under the Domestic Relations Code, specifically the Child Custody Act (23 Pa.C.S.A. §§ 5321-5340). The May 2023 order, from which Mother appeals, was merely a placeholder until the transfer of litigation to the Family Division of the Erie County Court of Common Pleas could be completed. Paternal Aunt, who changed representation since the filing of the emergency guardianship petition, does not dispute the court's order directing her to the family division. Mother is also in agreement. Indeed, it is Mother's position that the Child Custody Act provides her with certain protections and presumptions which, when applied, defeat Paternal Aunt's cause of action. That notwithstanding, Mother still challenges certain temporary provisions from the May 2023 order, which constitute this appeal.

We begin with Mother's first appellate issue – namely, whether the orphans' court erred when it granted Paternal Aunt standing to pursue custody. Under the Child Custody Act, and in accordance with the constitutional protections[3] afforded to parents, only certain individuals may petition for custody of another's child.

---

[3] Parents have a constitutional right to make decisions concerning the care, custody, and control of their children. *See, e.g., D.P. v. G.J.P.*, 146 A.3d 204, 210 (Pa. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality)); *see also* U.S. Const. Amend. 14.

In the context of this case, Paternal Aunt would have standing to pursue custody only if she could prove that she stands *in loco parentis*[4] to the Child, or that she: (i) has assumed or is willing to assume responsibility for the Child; (ii) has a sustained, substantial and sincere interest in the welfare of the Child, according to certain factors; and, perhaps most importantly (iii), neither parent has any form of care and control of the Child. **See** 23 Pa.C.S.A. § 5324(2), (4)(i)-(iii); **but see** § 5324(5) (rendering subsection (4) inapplicable).

At the May 2023 hearing, Paternal Aunt alleged that she stood *in loco parentis*. **See** N.T., 5/25/23 at 4-5. Additionally, Paternal Aunt argued that Mother waived her ability to challenge Paternal Aunt's standing. **Id.** The resulting May 2023 order provided Paternal Aunt with "standing to purs[u]e custody," but the court did not specify under which statutory ground. Moreover, the respective Rule 1925(a) opinions are largely silent on the issue. Our review of Mother's challenge compels us to answer a preliminary question:

_____

[4] The term "*in loco parentis*" literally means "in the place of a parent" **Raymond v. Raymond**, 279 A.3d 620, 627 (Pa. Super. 2022) (citing Black's Law Dictionary, 781 (7th Ed. 1991) (further citations omitted). A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. **Raymond**, 279 A.3d at 627. Critically, *in loco parentis* status embodies two ideas: "first, the assumption of a parental status, and second, the discharge of parental duties." **Id.** The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child. **T.B. v. L.R.M.**, 786 A.2d 913, 917 (Pa. 2001). However, the third-party in this type of relationship cannot place themselves *in loco parentis* **in defiance of the parents' wishes** and the parent/child relationship. **Id.** (citations omitted) (emphasis added).

whether the orphans' court even made a substantive standing decision under Section 5324.

Upon review, we conclude the May 2023 order did not actually grant Paternal Aunt standing to seek any form of custody under the Child Custody Act; rather, the order merely authorized Paternal Aunt to file the appropriate pleading in the family division, in order to effectuate the orphans' court transfer of the case.

The May 2023 order provides:

> As the issues presented by the parties pertain to the legal and physical custody of the minor child in a manner which is more appropriately addressed through the Family Division of the Court, [Paternal Aunt] shall, withing thirty days of the date of this order, file an appropriate pleading to initiate a custody proceeding. As set forth at the continued guardianship hearing, [Paternal Aunt] **has standing** to purs[u]e custody.

Order of Court, 5/25/23, at ¶1 (emphasis added).

Despite its use of the term "standing", the orphans' court never made a legal finding under 23 Pa.C.S.A. § 5324(2) or (4). In their respective Rule 1925(a) opinions, the orphans' court judges did not seem to understand why Mother raised the claim. Judge Walsh, who issued the temporary guardianship referred to Judge Kelly's opinion. **See** Trial Court Opinion by Judge Walsh (T.C.O. 2), 7/7/23, at 3-4. Judge Kelly merely stated her belief that she could not override Judge Walsh's temporary guardianship order – that doing so is the purview of the appellate courts. **See** Trial Court Opinion by Judge Kelly,

(T.C.O. 1), at 6/28/23, *3-4 (not paginated). Neither opinion analyzed the standing issue.

In our view, the orphans' court did not definitively rule on standing, so much as it articulated how the case would have to essentially start anew before the family division – namely, that Paternal Aunt must file a complaint in the family division, and that she had permission to do so.

We do not ignore the dialogue between the parties and the orphans' court during the hearing, wherein the court seemed persuaded by Paternal Aunt's argument that Mother waived her ability to challenge standing. **See** N.T., at 5/25/23, at 4-5, 17. But in the end, the orphans' court never ruled on the issue. In fact, Paternal Aunt concedes that the orphans' court did not make a finding relative to custody standing. **See** Paternal Aunt's Brief at 5.[5]

---

[5] As there appeared to be general confusion about standing procedure, we remind the court and the litigants of Rule of Procedure 1915.5. and its 2020 amendments.

Under the current iteration of Rule 1915.5, "[a] party may raise standing by preliminary objection **or** at a custody hearing or trial." Pa.R.C.P. 1915.5(a)(2) (emphasis added). The Rule no longer provides that standing may be contested "by preliminary objection filed within twenty days of service of the pleading to which objection is made or at the time of the hearing, **whichever first occurs**." **See** Pa.R.C.P. 1915.5(a) (emphasis added) (prior version).

Moreover, under the current iteration of the Rule, the custody court may raise standing *sua sponte*. Pa.R.C.P. 1915.5(a)(3).

In the case of a "third-party plaintiff custody action in which standing has not been resolved by preliminary objection, the court shall address the third-party plaintiff's standing and include its standing decision in a written opinion or
*(Footnote Continued Next Page)*

Right or wrong, the orphans' court believed it was bound by the prior temporary guardianship order until the case transferred to the family division, at which point the family court could hit the restart button. But in order for the case to reach the family division, the orphans' court believed it had to permit Paternal Aunt to file there, hence Paragraph 1. **See** Order of Court, 5/25/23, at ¶1. For these reasons, we conclude that Mother's challenge to Paternal Aunt's standing is premature; the lower court has yet to rule on her standing to pursue a third-party action under the Child Custody Act.

In her second appellate issue, Mother argues that that the orphans' court erred when it left in place the temporary guardianship pending further order from the family division. We disagree. First, it is apparent that the continuation of the temporary guardianship was nothing more than an interim award of temporary **legal** custody to preserve the *status quo*. The May 2023 order included a temporary physical custody schedule, but the court did not explicitly award temporary legal custody. For that, the court simply left the temporary guardianship in place:

---

order." Pa.R.C.P. 1915.5(a)(4) (emphasis added), (Explanatory Comment – 2020).

Finally, we note that this Court has recognized the fluid nature of third-party standing. **See M.W. v. S.T.**, 196 A.3d 1065, 1071 (Pa. Super. 2018) (holding that while the grandparent originally has standing at the time she filed the custody complaint, the trial court did not err when it dismissed the complaint for lack of standing; the court was free to consider the change in circumstances between the grandparent's complaint and the parents' petition to dismiss).

¶3 Pending resolution of the custody proceeding, or further order of court, the December 13, 2022 temporary order of court appointing [Paternal Aunt] as the Child's temporary guardian shall remain in full force and effect.

[…]

¶5 Mother shall be entitled to receive directly from schools, health care providers and other relevant sources, information concerning the Child. Nevertheless, consistent with the December 13, 2022 temporary order of court, Temporary Guardian [(Paternal Aunt)] retains all authority granted to her *via* her appointment as the Child's temporary guardian.

Order of Court, 5/25/23 at ¶¶ 3, 5.

Under the Pennsylvania Rules of Civil Procedure, courts have the authority to issue temporary custody relief:

At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody[.]

Pa.R.C.P. 1915.13 ("Special Relief").

Furthermore, Rule 1915.13 should be read broadly, empowering the court to provide special relief where appropriate, and that the power of the court shall not be limited to the types of relief cataloged. **See id.** (Explanatory Comment – 1981).

We clarify that the **orphans' court** had the authority to issue special **custody** relief, because it possessed the powers vested with the whole of the court of common pleas. As the Judicial Code makes clear:

- 12 -

> The divisions of a court of common pleas are administrative units composed of those judges of the court responsible for the transaction of specified classes of the business of the court. In a court of common pleas having two or more divisions each division of the court is vested with the full discretion of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.

42 Pa.C.S.A. § 952; *see also* 20 Pa.C.S.A. § 701 (providing that "each orphans' court division shall possess the powers vested in the whole court."); *and see Estate of Gilbert*, 492 A.2d 401, 403 (Pa. Super. 1985) (holding that each division of a court of common pleas is vested with the full jurisdiction of the whole court).

Here, Paternal Aunt commenced an action seeking a court order allowing her to care for the Child. But she filed in the wrong division. The remedy for bringing a proceeding in the wrong division of a court is not dismissal but transfer to the correct division. *Id.* (citing *Commonwealth v. Wadzinski*, 401 A.2d 1129, 1132 (Pa. 1978)) (further citations omitted). Under Rule 1915.13, no court has the authority to issue special relief until "after the commencement of the action." Naturally, Rule 1915.13 anticipates that the type of action is a custody action. Although Paternal Aunt filed a guardianship action, what she sought was custody.

The orphans' court had the authority to overlook this defect in the interest of justice and judicial economy. *See* Pa.R.C.P. 126 ("The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantive rights of the parties."). For

housekeeping purposes, the orphans' court directed Paternal Aunt to file the required pleading for a custody action. *See* Order of Court, 5/25/23 at ¶1; *see also* Pa.R.C.P. 1915.15. For all intents and purposes, the custody action had already begun. In its May 2023 order, the orphans' court was merely transferring the action to the proper division of court. Under *Gilbert*, this is the proper remedy. *Gilbert*, 492 A.2d at 403. As such, the court had the authority to act under Rule 1915.13, which is what it did when it left the temporary guardianship in place.

Recognizing that Mother's second appellate issue constitutes a challenge to an interim award of legal custody, we must confront whether such a claim is interlocutory. We address this concern mindful of the applicable scope and standard of review. Whether this Court has jurisdiction to consider an appeal is a legal question, for which our standard of review is *de novo* and our scope of review is plenary. *See J.C.D. v. A.L.R.*, 303 A.3d 425, 429 (Pa. 2023).

It is "well-ensconced in Pennsylvania that an interim custody order is not appealable." *J.M. v. K.W.*, 164 A.3d 1260, 1263 (Pa. Super. 2017). Until a trial court conducts an evidentiary hearing, where it can make proper findings pursuant to Section 5328(a) (regarding the custody factors), in light of Section 5327 (regarding parental presumptions), any award of custody is on an interim basis. Such awards are "ephemeral and subject to further modification." *See J.M.*, 164 at 1263. To consider appeals from these interim orders would be to conduct piecemeal and inefficient review of the trial court's decisions, in direct circumvention of the finality rule. *See J.C.D.*, *supra.*

Therefore, we conclude that Mother's challenge of the continuation of the temporary guardianship – *i.e.*, legal custody – is interlocutory.

In her third issue, Mother challenges the court's interim award of shared physical custody. ***See*** Order of Court, 5/25/23, at ¶4. Although the interim award constituted an increase in Mother's custody and was designed to facilitate parental reunification, we appreciate Mother's position that Paternal Aunt should not be entitled to any custody at all. However, the May 2023 order was only temporary. It was meant to preserve the *status quo* and provide stability for the Child, on an interim basis, until such time that the family court could properly determine the Child's best interests. Again, an appeal challenging an interim custody award is interlocutory. ***See J.M.***, 164 A.3d at 1263. For the reasons mentioned above, we do not reach merits of Mother's third issue.

In sum, we quash Mother's appeal as interlocutory. We conclude that Mother's standing challenge is not ripe for our review, because the family division had yet to determine whether Paternal Aunt had standing under 23 Pa.C.S.A. § 5324. Moreover, the continuation of the temporary guardianship was essentially a temporary award of legal custody, which the court could issue under Pa.R.C.P. 1915.13 and 42 Pa.C.S.A. § 952. For the same reasons, the orphans' court was authorized to make a temporary award of shared physical custody to preserve the *status quo*. Because appeals from interim custody awards are non-reviewable, Mother's second and third appellate issues are interlocutory.

- 15 -

Appeal quashed. Jurisdiction relinquished.

Judge Murray joins.

Judge Bowes concurs in result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/14/2024